The State, etc., *v.* The Mayor, etc., of Nashville.

THE STATE *ex rel.,* T. A. KERCHEVAL *v.* THE MAYOR AND CITY COUNCIL OF NASHVILLE *et al.*

1. CORPORATIONS. *Ultra vires.* The charter of the city of Nashville, providing the compensation of the mayor shall be $2,400 per annum, and may be changed by ordinance, but not during his term of office, an ordinance of the city council providing that after the expiration of the term of the *then* mayor, the mayor shall serve without compensation, was *ultra vires* and void.

2. SAME. *Estoppel.* The mayor elected after the passage of said ordinance was not estopped from claiming salary by the fact that he knew of said ordinance abolishing the salary, nor by any statement he may have made to the electors while a candidate, that if elected he would serve without compensation. A promise by a candidate to serve if elected without compensation might be a ground for his removal, but will not estop him from claiming the salary of the office.

FROM DAVIDSON.

Appeal in error from the Circuit Court of Davidson county. FRANK T. REID, J.

JOHN RUHM and SAMUEL WATSON for Kercheval.

J. C. BRADFORD and A. S. COLYAR for Nashville.

COOPER, Sp. J., delivered the opinion of the court.

The relator in this case, T. A. Kercheval, is the present mayor of the city of Nashville. He seeks, by *mandamus,* to compel the city council to place the amount of compensation, or salary, claimed by him as mayor for 1886, in the budget for the expenses of the city for said year; and also to compel the comptroller of the city treasury to place his name on the

list of the city creditors, and to issue warrants on the city treasurer for the amounts claimed to be due him as mayor for October and November, 1885.

His Honor, the circuit judge, was of opinion that the relator was entitled to the relief sought, and directed peremptory writs of *mandamus* to be issued accordingly. From this judgment defendants, or some of them, have prosecuted an appeal in error to this court.

The record indicates that the relator was elected mayor of Nashville on October 8, 1885, and inducted into office on the 13th day of the same month. It was suggested in argument, by defendant's counsel, that the proceedings in the court below were in some respects irregular. But it is sufficient to say, as to this, that the course pursued in that court was in substantial compliance with the practice approved or suggested, in the case of *The State ex rel.*, v. *Board of Inspectors*, 6 Lea, 18.

The real grounds of defense relied upon in the demurrer and answer, are these: 1. That the city council, by ordinance adopted in May, 1885, declared that upon the expiration of the term of office of the then mayor, that the mayor of the city should not receive any compensation, that this ordinance is valid, and therefore the present incumbent is not entitled to any compensation. 2. That if this ordinance is for any reason invalid, still the relator is estopped from claiming and receiving any compensation, because in his canvass for said office he declared that if elected he would not claim any compensation for his services as

mayor. The determination of these questions decides the controversy. As to the first of these questions, on March 21, 1883, the Legislature of the State passed an act (the same being approved March 26, 1883), which repealed the charter of the city of Nashville, said act taking effect on the second Thursday of October, 1883. On the same day the Legislature passed another act, (which was approved March 27, 1883), providing "for the creation and organization and defining the powers of municipal corporations embracing territories of cities having a population of 36,000 and upward, according to the federal census of 1880, whose charters have been abolished." This act also took effect on the second Thursday of October, 1883, and under it the present city government of Nashville is organized, and had its birth at an election held on the day the act went into effect.. An examination of the provisions of this act is necessary to the determination of the validity of the or-.dinance already referred to. Indeed, an inspection of the entire act is needful to obtain a just comprehension of its intention, spirit and purposes. It has been argued for the defendants that this act is a general law, and that it should not be tested by the same rules of construction that are applied to special charters. To this view we cannot accede. While the act is, in one sense, a general law, it is, for all practical purposes, the charter of Nashville, and is so designated in the city code recently compiled. It is the grant of power. From it the city government derives its life and vigor; and to its restrictions and

limitations the municipality is subject. Under this grant of authority, the agents and officials of the city have no more power than they would have if it were a special charter instead of a general law, and as to the rules of construction of special charters there has been no contention in the argument.

By the terms of this charter act a city council of ten members is provided for, and the powers of this council are largely, if not chiefly, legislative in their character. It also provides for a mayor, whose duties are chiefly, but not wholly, executive. The act further provides for the creation of a board of public works and affairs of three members, and the duties of this board may be said to be chiefly administrative. So the act fairly divides the city government into three departments, and these may be conveniently classified as the legislative, executive and administrative departments, and in the act the rights and duties of each are specifically pointed out.

The judicial department of the act treats as a subsidiary matter.

The system of city government devised by this charter act seems to have been thoroughly considered, and there appears to be no good reason why, in practice, it should not prove to be a successful form of government. There are thus three departments, all important and each having its sphere of action, and the checks and balances provided for are well suited to prevent mal-administration. As said, the powers of each department are designated, and one is not allowed to encroach upon the domain of the co-ordi-

nate departments. Such is the general scope and purpose of the charter act, and the intention of the Legislature, as to the powers of the co-ordinate departments, seems to be clearly manifested.

Sections three to eight, both inclusive, relate to the city council, and the last sentence of section eight of said charter act, is this: " *Councilmen* shall receive no compensation." Here it is clearly expressed that the city's officers in this department of the government were to serve without pay. Whether this provision is a wise one experience alone will demonstrate. But the duties of the council, while important, are not necessarily onerous, after the government is once fully organized and a system of ordinances adopted. A majority make a quorum for business, and hence, by arrangement, each councilman can be absent from four-tenths of the meetings of the council if he so desires.

The ninth section enumerates many of the duties of the mayor, and near the end of that section occurs this clause: " The compensation of the mayor shall be $2,400 per annum, and may be changed by ordinance, but not during his term of office." The twenty-sixth and twenty-seventh sections of said act provide for the election of the board of public works and affairs by the city council, their qualification, etc., and the twenty-eighth section, is this: " That the members of said board of public works and affairs shall devote their time and attention to the duties of their office, and shall not engage actively in any other business. The compensation of said board of public works and affairs shall be fixed by the mayor and

city council prior to their election; *Provided,* that the amount of such salaries shall be uniform and subject to such change as the mayor and city council may, from time to time, in their judgment, expressed by city ordinances, deem advisable, and their salaries shall not be changed during their term of office."

The ordinance adopted in May, 1885, by the city council, is in these words: "After the expiration of the term of the present mayor of the city, the mayor shall serve without compensation." Is this ordinance valid, or is it *ultra vires?* The relator insists that the power given the council in the ninth section of the charter act, and quoted, to change the compensation of the mayor does not confer, or imply, the authority to take away all compensation; while the defendants maintain the converse of this proposition.

In determining this question, we must keep in mind, among other things, the fact that this charter act applies only to cities of a population of "thirty-six thousand and upwards." Millions of property are affected by the administration of the city government. For this reason, the Legislature, it is to be inferred, would be more *cautious* in its grant of power. A liberal grant of power to a village might not prove disastrous, while the same grant of power to a city might ultimate in financial ruin. This, act bears evidence that it was drawn with great care. It expressly provides, that councilmen shall receive no compensation. If it had intended that the mayor and the board of public works and affairs should receive no compensation, it certainly would have been so

·expressed. If the act had intended to leave this ·question of the compensation of the officers of the ·executive and administrative departments to the dis- ·cretion entirely of the council, and leave the council to ·determine whether they should receive any compen- ·sation at all for their onerous services, it certainly would have contained a clear provision to that effect. The withholding of pay from the officers of the leg- islative department of itself, indicates an intention that the officers of the other two departments should receive ·compensation; and this intention is emphasized by the provisions in sections nine and twenty-eight relative ·to compensation. The office of mayor is created by the charter act, as is the office of councilman. The mayor and councilmen are chosen by popular vote. The board of public works and affairs are chosen by the council, but their salaries are to be fixed before they are chosen. Why does the act fix the mayor's salary ·at $2,400 till changed by the council? The fact that it was so fixed for the first term, shows that the Legislature intended he should have compensation; and the act fixes an amount adequate to secure respectable ·capacity. It was not left to the council after elected, lest an amount unsatisfactory should be fixed. By providing a salary for the first term, and till changed by the council after the city was organized, we have an expression from the Legislature as to the meaning and intention of the act, to-wit: That the mayor should receive compensation. If the city council can deprive the mayor of compensation, there appears no reason why it may not also refuse compensation to

the board of public works and affairs. The council is empowered to *change*, in like manner, the pay of said board. This board is required not to engage actively in any other business, but if the mayor does his duty under this act he will not have time to engage actively in any other business. If the council can deprive the mayor and the board of public works and affairs of all compensation, then it has the power to so emasculate those departments of the government that all vigor and efficiency will be gone, and the government of the city will be left, practically, in the hands of the council. In such event the system of government provided by the charter act will be subverted and the intention of the Legislature *thwarted*. It cannot be that so dangerous a power was intended to be lodged in the council.

It is urged, however, by defendants that as the power of the council to *change* the compensation is expressly given, that it can reach the same end as that sought in said ordinance by reducing the mayor's salary to a nominal amount, and that this being true demonstrates the correctness of the position that the council has the power to abolish the salary altogether—that it is useless to deny this *plenary* power, when the council can change the salary from $2,400 to one dollar. In the case of the State at the relation of *Hulsey* v. *Gaines*, 2 Lea, 322, Judge McFarland says of an argument of this character: "This is an argument often resorted to, and no argument is more fallacious." We may enlarge the suggestion. When officials are advised of the fact that their power

over a given matter is not absolute, but that they have a trust to discharge, a court will never presume that they will abuse that trust. If the city council should ever attempt to abuse their trust, it will be time enough then to decide whether their action, in the exercise of a clearly vested power, is final and not subject to revision by any tribunal—whether the only remedy left is an appeal to the electors at the ballot box. It might be that an ordinance reducing the mayor's salary to a nominal amount would be unreasonable and void; or that an ordinance increasing it to an exorbitant amount would likewise be invalid. The one hundreth part of the salary fixed by the charter act is twenty-four dollars. One hundred times the amount so fixed is $240,000. Defendants argue that the council can reduce the compensation to as small a sum as twenty-four dollars. If so, can they not increase it, if they see fit, to $240,000? But, as stated, it is not necessary to decide this point.

As already intimated, an inspection of said act will show that the duties of the mayor are numerous and important. The office is by no means a sinecure. One of his important duties is to see that all the laws and ordinances of the city are faithfully executed. Without pay, he cannot be expected to give much attention to the affairs of the city. The law will not permit an officer's salary to be taken for his debts, because without salary he would not be able to discharge his trusts. Human ingenuity cannot devise a system of laws so perfect but that unscrupulous and designing men can evade and pervert them,.

45—VOL. 15.

and no safeguard is equal to constant watchfulness and supervision. Any one at all familiar with the administration of public affairs knows the necessity of constant scrutiny, and the act under consideration imposes important supervisory duties upon the mayor. What is here suggested is not said with reference to the policy or impolicy of the ordinance referred to, but these considerations can be legitimately looked to in ascertaining the intention of the Legislature. That the council may have been influenced by the best of motives, of course does not affect the question at issue.

It is also insisted by the defendants that the relator knew, when he offered himself for the position of mayor, that the salary had been abolished, and is, therefore, estopped. The ordinance abolishing the salary being void, it cannot affect the legal rights of the relator: *Burch* v. *Baxter*, 12 Heis., 603.

There are other reasons that might be adduced why said ordinance is void, but we deem it unnecessary to give them. And, in the view we have taken, it is unnecessary to pass on the question whether said ordinance was unreasonable or oppressive. A grant of charter powers, as a general rule, is strictly construed. A power exercised under a municipal charter must be expressly conferred, or fairly implied from the language or purposes of the act. We have not found or been furnished with any precedent in point, but under the admitted principles of construction, we hold that the ordinance of May, 1885, depriving the mayor of compensation, was beyond the power of the city council and void.

It is also insisted that the relator is not entitled to compensation, because while a candidate he promised he would serve without compensation if chosen to the office. This statement is set up in some of the answers, while the answer of four of the defendant councilmen says, in substance, that this allegation is untrue. This allegation in avoidance was demurred to by the relator, said demurrer was sustained by the circuit judge, and as the answer, besides this, set out no other or further ground of defense than had been already determined on the demurrer to the petition, on motion, the peremptory writ was awarded.

The circuit judge properly sustained the demurrer to the answer. Even if it be true that the relator, while a candidate, told the electors that he would serve without compensation if elected, this is not a contract, nor is he estopped thereby. If a candidate makes such a promise to the voters, it is only binding in the forum of conscience. It may impose upon him a moral, but no legal obligation. If an office have a salary attached to it, it is even against public policy to permit such agreements. This has been determined in numerous cases, some of which have been cited in argument: 36 Wisconsin, 213; 72 Missouri, 13; 53 Iowa, 346; 20 Pick., 428.

Such an agreement by a candidate might be ground on which to remove him from office after election, but is no legal reason to prevent his receiving the salary of the office.

The judgment of the circuit court will be affirmed and the cause remanded to the end that the peremptory writs be issued.