*TENNESSEE COACH CO. *et al.* *v.* MAYOR, ETC., OF CITY OF LENOIR.

(*Knoxville*, September Term, 1942.)

Opinion filed January 9, 1943.

*This case reprinted and annotated in 144 A. L. R. 1116.

454

A. T. DRINNON, of Morristown, for appellant.

GOODWIN & BABCOCK, of Lenoir City, for appellees.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

The bill was brought by the Coach Company, a common carrier operating on a State highway thru and over the streets of defendant City, to enjoin the enforcement of an ordinance of the City to restrain, or restrict, the use by complainant of its streets for the loading and unloading of passengers. The insistence appears to be, (1) that because the Coach Company was the holder of a certificate of convenience and necessity, issued to it by the State Utilities Commission, authorizing it to operate over this highway running thru the City of Lenoir, no right remained in the City to regulate and control it in its use of the City streets; and (2) that the ordinance is prohibitory in character, rather than regulatory only, unreasonable and discriminatory, and therefore void.

The Chancellor overruled a demurrer and by final decree enjoined the enforcement of the ordinance. The City appealed and by its assignments challenges both of the above stated contentions.

■ ■ Considering, first, the second of the grounds relied on for the Coach Company, we do not find the ordinance to be prohibitory in the sense asserted, but regulatory only. It is true that the language is somewhat broad, in that it purports to prohibit the Coach Company, and its servants, and other motor carriers of its class, "from loading and/or unloading passengers on or upon any of the public thoroughfares within the corporate limits," etc., but when the object set forth in the ordinance, as being the prevention of, "congestion of traffic and dangerous, unsafe and hazardous conditions, endangering the lives and property of other users," of the City streets, is considered, it is apparent that it is not the purpose of the Act to prohibit altogether the taking on or off of one or more passengers, at reasonable points within the City limits. We think the language of the ordinance may and should be construed as intended to accomplish the purposes of its enactment as set forth therein. The principle of the maxim *ejusdem generis*, which requires that general terms be related to specific enumerations, has application.

The habitual and fixed use of a certain point or place in the streets as a stopping place, in substitution for a station or depot, or the like, where passengers are invited and accustomed to gather and congregate, and where the stopping of the Coach Company busses is not momentary, or occasional, but where their busses come to rest and remain for more or less periods of time, necessarily creates congestion of traffic and the dangers incident described in the ordinance.

This record indicates that it was just such a use of the City's main street that was being made by the Coach Company in this case. One Bert Day is joined as a complainant in the bill, and it is alleged that Day is "ticket

agent for the complainant, Tennessee Coach Company, and operates a bus depot for the said Tennessee Coach Company at his drug store located within the corporate limits,'' and on the street thru which the highway used by the Coach Company runs, and it is charged that if the ordinance is enforced, ''Bert Day will lose his commission on ticket sales which amount to approximately $300.00 per annum; that complainants have operated this depot and transportation company for more than ten years and it is well established, the Drug Store of complainant, Bert Day, has a good many chairs, space, rest rooms for the accommodation of the traveling public and is kept open long hours, clean and in a sanitary condition, and the traveling public desiring to patronize your complainant, Coach Company, has every accommodation that may be offered in waiting on busses to load and unload in availing themselves of Motor Bus Transportation.''

. It thus is made apparent that what the City seeks primarily to restrain by this ordinance is the use of this public street on which this depot-drug store is located for this preferential service, at the expense to the public generally of congestion and confusion of traffic, both street and sidewalk. Such being the nature and character of the use of the streets for loading and unloading of passengers which we construe the ordinance to prohibit, we think the ordinance is a reasonable regulation only, well within the corporate powers of the municipality.

 Nor do we find that the first above noted objection is tenable. We are aware of no language or provision of the Act and its amendments delegating to the Railroad & Public Utilities Commission authority over common carriers, which conflicts with or denies, to the munici-

palities of the State, the power to regulate reasonably traffic thru and over its streets, in the exercise of police powers, to prevent traffic congestion and the dangers incident thereto. For example, it surely would not be contended that a City might not enforce stopping by motor carriers at red light signs and street intersections; or limiting to reasonable speed such carriers thru certain areas, etc., etc.

Section IV of the Public Acts of 1933, Chapter 119, is relied on for the Coach Company, being thus quoted from in the original bill herein:

"The Railroad and Public Utilities Commission is hereby vested with power and authority, and it shall be its duty to license, supervise and regulate every motor carrier in this State, to fix or approve the rates, fares, charges, classifications and rules and regulations pertaining thereto; to regulate and supervise the schedules, service and method and operation of same; to require the filing of annual and other reports and any other data; to require that the accounts and records of such motor Carriers be kept and maintained in a manner consistent with good accounting practice; and to supervise and regulate motor carriers in all matters affecting the relationship between such motor carriers and the public."

The authority to "regulate" therein conferred is with respect to the various phases of operation therein set forth, such as "rates, fares, charges, classifications;" also, "schedules, service and methods and operations of same," etc. It will be observed that no attempt is made to confer exclusive or other authority over the use of a City's streets in matters pertaining to traffic congestion, or speed, or the like. It is said that the street here involved is a designated State highway and that as to and while on such ways the holders of certificates of

convenience issued by the Utilities Commission are subject to the authority of, and may be regulated by, the Commission only.

In *Thompson* v. *City of Memphis*, 167 Tenn., 75, 66 S. W. (2d), 990, we considered a similar claim made on behalf of another State agency and said:

"It is altogether immaterial that the ambulance was being driven on a street designated [by the State Highway Commission] as a part of the state highway system. Such designation does not destroy or limit the city's right to regulate traffic on such a street. *Collier* v. *Baker,* 160 Tenn., 571, 27 S. W. (2d), 1085."

In the *Collier Case* cited the reservation to municipalities of police powers over its streets in the matter of traffic is emphasized. It was the rights of the State Highway Department which were there involved, over designated highways thru the City's streets, but the principle here applicable is similar. Counsel for appellee Coach Company cite the *Collier* case as supporting authority, saying that it was therein held that the State Highway Department "had a right to regulate traffic over the streets of a municipality without the consent of said municipality." We do not so understand the holding. It was held that the State Department had the right to select the streets thru which traffic from State highways shall be routed, but (quoting from the headnote), "the streets selected retain their identity as city streets and are under the control and subject to the police power of the city." And, furthermore, the right of selection conferred on the Highway Department was restricted to such streets as the municipality designated for traffic of the character coming in over the State highways. The dominant authority of the police power of the City to

control and direct, or regulate, traffic on its streets was distinctly recognized.

Authorities cited on the brief for appellant touching the controlling and superior power of the State over its municipalities are not questioned. No doubt, the State Legislature could deprive its municipalities of all authority over traffic on a highway or highways, passing thru such municipalities. But we do not think it has done so, either directly, or by delegation of exclusive power to the Public Utilities Commission. For the reasons indicated, the decree of the Chancellor is reversed and the bill dismissed.