CITY TRANSP. CO., INC. *v.* PHARR *et al.*

(*Nashville*, December Term, 1947.)

Opinion filed February 28, 1948.

PENN, HUNTER, SMITH & DAVIS, of Kingsport, and WIL-LIAMS, CUMMINGS & WEST and JAMES CLARENCE EVANS, all of Nashville, for City Transp. Co.

BANDY & BANDY, of Kingsport, and McCANLESS & TAY-LOR, of Morristown, for Tri-State Coach Corporation.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

On October 22, 1946, the State Railroad and Public Utilities Commission granted the Tri-State Coach Cor-poration a certificate of convenience and necessity to operate motor buses from a point approximately two and one half miles from the city limits of Kingsport to the corporate limits of said city, and thence over certain designated streets, with closed doors, to the Union Bus Terminal, and from there to the plant of the Tennessee-Eastman Corporation, which is partially within the cor-porate limits of Kingsport.

The City Transportation Company, Inc., entered a pro-test and later filed a petition in the Chancery Court at Nashville for *certiorari* and *supersedeas* seeking a re-view of the action of the Commission, and a judgment setting aside the said order.

The three members of the Commission were made par-ties defendant in their official capacity. Answers were

filed by all defendants, and the transcript of the proceedings before the Utilities Commission was duly certified to the Chancery Court. Subsequently, Samuel S. Pharr, Chairman, and his associates moved the Trial Court to strike their answer to the petition, which was done, to which action of the court the City Transportation Company excepted.

The Chancellor heard the cause on the certified record, oral argument and briefs of counsel. He sustained the petition and set aside the order of the Commission. The Tri-State Coach Corporation excepted to the Chancellor's decree and was granted an appeal to this Court. We are asked to consider the following assignments of error:

"I. The Court erred in holding Chapter 52 of the Public Acts of 1943 constitutional.

"II. The Court erred in holding that Chapter 52 vested in the City of Kingsport exclusive jurisdiction to grant franchises or certificates of convenience and necessity for motor carriers to operate in the City and its environs.

"III. The Court erred in holding that Chapter 52 repealed by implication the motor carrier act.

"IV. The Court erred in holding that the Commission exceeded its authority in granting the certificate to Tri-State Coach Corporation.

"V. The Court erred in declaring the certificate void in its entirety rather than remanding the case to the Commission for proper action."

This suit involves primarily the jurisdiction of the Railroad and Public Utilities Commission and the City of Kingsport in the matter of regulating motor carriers of passengers operating within a particular area. The City of Kingsport is not made a party to the present ac-

tion and hence is not asserting any authority. Neither is the Utilities Commission insisting upon the validity of its order since it did not appeal from the Chancellor's decree. The contest is therefore between the two public carriers.

The Tri-State Coach Corporation insists upon the validity of its certificate of convenience and necessity which it holds from the Commission. The City Transportation Company holds a franchise from the City of Kingsport to operate in the city and its "environments." The former is an interstate carrier, while the latter is local or intrastate and operates from the Virginia state line (which is two and one half miles beyond the city limits of Kingsport), and upon the city streets generally.

Prior to the passage of Chapter 52 of the Public Acts of 1943, the Railroad and Public Utilities Commission was clothed with full authority to regulate common carriers. By the enactment of said statute the various municipalities in the State were given "general . . . jurisdiction and control over street railway companies, their property, property rights, facilities and franchises," and "such municipalities shall have the same powers with respect to street railways operating within their limits that are now granted to the Railroad and Public Utilities Commission of the State of Tennessee," except as to the method of assessing property for *ad valorem* taxes. The matter of taxation was thus left to the State Utilities Commission.

The Act defines " 'street railway companies' " to include "gasoline or electric or other self-propelled coaches for transportation of passengers within a municipality and in its environs and the regulation herein provided for shall be exercised both within the municipal limits

and outside thereof within a radius of seven miles from the corporate limits into the county.''

The City Transportation Company, which claims to be under the jurisdiction of the City of Kingsport by virtue of the above statute, operates a transportation system covering the entire area from the Tennessee-Virginia line all the way into Kingsport, making 74 round trips daily over Highway No. 23. The certificate issued by the Commission to the Tri-State Coach Corporation authorizes it to operate busses over the same route, going through the city to its Bus Terminal and thence to a point one mile beyond the city limits to the Tennessee-Eastman Corporation. It designates routes over certain city streets, but provides for ''closed doors within the City of Kingsport.''

The several assignments of error present two important questions: (1) The constitutionality of Chapter 52, Public Acts of 1943, and (2) that if held valid, the authority thus conferred upon municipalities is concurrent with that of the Commission.

The contention is made by appellant that the Act in question is an attempt to confer governmental power upon cities beyond their geographical limits and for this reason is invalid. In support of this assignment counsel cite the cases of *Gulf Refining Co.* v. *City of Knoxville*, 136 Tenn. 253, 188 S. W. 798, and *Malone* v. *Williams*, 118 Tenn. 390, 103 S. W. 798, 805, 121 Am. St. Rep. 1002. These cases are not controlling in the present controversy.

In the *Gulf Refining Co. Case* the City of Knoxville claimed the right to levy a privilege tax under the General Revenue Act upon an oil depot outside the corporate limits of Knoxville. It was held the statute conferred no such extraterritorial authority.

In *Malone* v. *Williams* the Legislature undertook to confer extraordinary powers upon agents of the City of Memphis such as to abate nuisances upon public and private property in a summary manner and at the cost of the owner or occupant of the premises. Other drastic provisions of the Act, which purported to amend the city charter, conferred ''unlimited and irresponsible'' authority over property beyond the city limits for a distance of ten miles. It was held ''such provisions cannot be upheld in a free country. No man is wise enough, or good enough, to be vested with arbitrary power over the property of his fellow citizens.''

While the jurisdiction of municipalities, as a general rule, is confined to their own limits and internal affairs, yet exceptions have been made in many instances where public necessity required the city to enforce its police powers beyond geographical limits. *Chicago Packing & Provision Co.* v. *Chicago*, 88 Ill. 221, 30 Am. Rep. 545; *People* v. *Raims*, 20 Colo. 489, 39 P. 341; *O'Brien* v. *Amerman*, 112 Tex. 254, 247 S. W. 270. Many other authorities could be cited to the same effect.

The statute, Chapter 52, *supra*, which is assailed in the instant case, deals with only one question, that of the authority of cities to regulate street railway transportation inside and outside the corporate limits. The Legislature, by this statute, conferred upon municipalities exclusive power to regulate local transportation systems beyond their corporate limits because a large and congested area that needed this public service was in many instances located several miles beyond the city limits as fixed by its charter. Moreover, public necessity required that a single system should be under one authority. It is unthinkable that the Legislature would

place the general control of a city transportation system under two conflicting jurisdictions to the utter demoralization of its operation and injury to the traveling public.

We therefore hold that the effect of the Act here assailed was to divest the Public Utilities Commission of its general jurisdiction over street railway operations in the City of Kingsport and its environs and to grant exclusive jurisdiction to the city.

■ If we should compare the provisions of Chapter 51, Acts of 1943, it confirms the clear intention of the Legislature to confer such authority. Conceding the Act, Chapter 51, to be invalid, it is important as showing legislative intent. *Sales* v. *Barber Asphalt Pav. Co.*, 166 Mo. 671, 66 S. W. 979; *Board of Com'rs, etc.*, v. *State*, 184 Ind. 418, 111 N. E. 417.

■ The Tri-State Coach Corporation has no right under its said certificate to operate a bus line as a part of a city system of transportation through the City of Kingsport and independent of any grant by the governing authority of said city. The mere fact that it claims to operate "with closed doors" upon reaching the city limits does not alter the case. If the State Utilities Commission has authority to require "closed doors" within a given area, it may impose other restrictions, such as designating routes to be traveled by motor busses.

The "closed door" feature of the certificate, and authority to take on and discharge passengers at its terminal station, does not make it other than a street railway system operating as a public service corporation in the City of Kingsport, and jurisdiction over such operations is in the governing authority of the city and not in the Public Utilities Commission.

Counsel for appellant contend that the charter of the City of Kingsport confers no power claimed for it in the instant case. It is thus argued: "Water can rise no higher than its source and no act can be done by any municipal corporation unless words can be found in its charter authorizing it." Citing *City of Memphis* v. *Adams et al.*, 56 Tenn. 518, 24 Am. Rep. 331, and *State ex rel.* v. *Mayor, etc.*, 83 Tenn. 697, 54 Am. Rep. 427.

The authorities cited merely sustain the generally accepted principle that a city must act within its charter rights. Moreover, the answer to appellant's contention is that when the Legislature enacted "Chapter 52" said Act then and there became a part of the charter of Kingsport, as well as every other municipality affected by it.

We take judicial cognizance of the fact that since its passage every city in the State having a street railway system has exercised control over such systems to the exclusion of any right of the Public Utilities Commission.

We find no merit in the further contention that the Chancellor erred in holding that "chapter 52 repealed by implication the Motor Carriers Act." It must be conceded that an Act does not repeal a former Act by implication except where there is an irreconcilable conflict between the two. We think it is plainly to be seen that the authority conferred upon cities by said Act is exclusive and is not concurrent with that formerly vested in the Commission. For us to sustain such a contention as made by appellant would violate both the spirit and letter of the statute and invite utter confusion and demoralization into the operation of city transportation systems.

In further support of appellant's position it is argued that if "Chapter 52 is given the interpretation as announced by the Chancellor," the result would be that "every intercity common carrier must apply to every city along its route for permission to travel through such cities." In response it is only necessary to say that we find no authority which sustains the right of any intercity, or interstate common carrier, to have the unrestricted use of city streets and other public thoroughfares. Municipalities still have some control of their streets. *City of Chattanooga* v. *Jackson*, 172 Tenn. 264, 111 S. W. (2d) 1026; *Tennessee Coach Co.* v. *Lenoir City*, 179 Tenn. 453, 167 S. W. (2d) 335, 336, 144 A. L. R. 1116; Code, sec. 3326.

In *Tennessee Coach Co.* v. *Lenoir City, supra,* it was held: "Fact bus company held certificate of convenience and necessity authorizing company to operate busses over state highway running through city did not give company right to have enjoined enforcement of city ordinance prohibiting motor carriers from loading and unloading passengers on city streets. Pub. Acts 1933, chapter 119, sec. 4."

The record before us shows without dispute that appellant Tri-State Coach Company had a permit from the State Public Utilities Commission to operate a bus line from the Virginia state line and beyond over Highway No. 23 into and through the City of Kingsport. Why was it in need of another certificate? The answer is found in the statement of its counsel to the Commission as follows: "Our Company presently enjoys an interstate permit over this same route, but has no right to pick up and discharge intrastate passengers in Tennessee."

The conclusion is inescapable that it seeks a permit to pick up and discharge passengers within the area that is

now served by the City Transportation Company. It needs no further permit to entitle it to transport passengers from Gate City, Virginia, and immediate environs, into the City of Kingsport and beyond to the Tennessee-Eastman Corporation and return. Such interstate passengers may also be discharged at its bus terminal and/or carried to other points beyond. But it cannot pick up and discharge passengers at any point that in contemplation of law would be competitive with a transportation system that is subject to the governing authority of the City of Kingsport.

In conclusion it should be said in justice to the members of the Utilities Commission that they, from the beginning, entertained serious doubts as to their authority in this matter. The Commission at first declined to grant the permit but later approved it. The fact that they did not appeal from the Chancellor's decree voiding it would indicate that it was not disapproved by them.

We find no occasion for remanding this cause for any further orders by the Commission. All assignments of error are overruled and the Chancellor's decree is affirmed.

All concur.