PATTERSON *v.* CITY OF CHATTANOOGA *et al.*

(*Knoxville*, September Term, 1950.)

Opinion filed June 16, 1951.

WILKERSON & WILKERSON, of Chattanooga, for appellant.

MOON & ANDERSON, and SPEARS, REYNOLDS, MOORE & REBMAN, all of Chattanooga, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The issues involved, the method of trial below and the result are succinctly and fairly stated in the brief of the appellant as follows:

"The bill attacks the validity and constitutionality of Chapter 602 of the Private Acts of 1949 and action taken thereunder by the defendants. This Act authorizes the establishment of a sewer system by the City of Chattanooga, the issuance of revenue bonds and the making of a contract between the City and the City Water Com-

pany whereby the Water Company will collect the tax levied to retire the bonds and will discontinue water service to its customers who do not pay the tax. The tax is levied and its amount fixed by the amount of water used. Rule No. 32 of the Railroad and Public Utilities Commission also purported to authorize the contract.

"The bill, avers that said Act and Resolution No. 3065 of the City Commission levying said tax are void and in violation of Article II, Section 28 of the Constitution of Tennessee in that the tax is levied upon some taxpayers and not on others, and because it is not based upon the value of the property, but is based upon the amount of water used.

"The bill alleges that said Act is void in that it purports to authorize the City to construct sewers and to contract with communities beyond the limits of the City and outside the State of Tennessee, and that it is violative of Article XI, Section 8 of the Constitution of Tennessee because it confers rights to the City of Chattanooga which are not granted to other municipalities of the State.

"The bill alleges that the contract between the City and the Water Company and Rule 32 of the Railroad and Public Utilities Commission authorizing the discontinuance of water service for failure to pay the tax deprive complainant and other water users of property and property rights in violation of Article I, Sections 8 and 21 of the Constitution of the State of Tennessee and the Fifth Amendment to the Constitution of the United States.

"The prayers of the bill are for a declaratory judgment holding that Chapter 602 of the Private Acts of 1949, Rule 32 of the Railroad and Public Utilities Commission, Ordinance No. 3065 of the City of Chattanooga

and the Contract between the City and the Water Company are void and of no effect for the reasons set out in the bill.

"The answer of the City admits the material allegations of the bill, but avers that the Act and all steps taken pursuant thereto are valid and constitutional.

"The answer avers that the tax is really a service charge and is validly imposed under the police powers of the State.

"The answer further alleges that under the provisions of Chapter 183 of the Public Acts of 1945 all municipalities of the State are authorized to construct sewer systems beyond their corporate limits and make contracts relative thereto.

"The answer also avers that Rule No. 32 of the Railroad and Public Utilities Commission is within the powers lawfully delegated to the Commission, and that said rule and the contract to discontinue water service for failure to pay the tax are valid.

"The answer alleges that the construction of the sewer system is necessary and a public health measure and to comply with an order of the Stream Pollution Control Board of the State.

"The defendant, City Water Company, adopted the answer of the City.

"The stipulation admits the authenticity and correctness of the Resolution authorizing the issuance of the revenue bonds and levying the tax; also Rule 32 and order of Railroad and Public Utilities Commission approving the contract between the City and the Water Company; and, the public health features of the sewer system and the necessity of its construction in order to comply with the Stream Pollution Control law.

"The additional stipulation attaches thereto certified copies of Chapter 32 of the Private Acts of 1951 (amending the Charter of the City) and Chapter 249 of the Private Acts of 1951 (amending the charter of the Water Company). Both of these acts purport to empower the City and the Water Company to enter into contracts to permit the Water Company to collect the sewer tax and to discontinue water service upon nonpayment of the tax.

"The Chancellor determined all issues against the complainant and decreed accordingly."

The issue involved, in a nutshell, is: Can a City construct a sewer, where it is necessary to do so for the purpose of disposing of sewage and making the City more sanitary, under an Act authorizing it to do so and then charge the users of water in the City for the construction of this sewer? The incidental question is also involved of whether or not the City may contract with an independent corporation to collect this sewage rental and if it is not paid cut off the water of the consumer and the rent payer?

The first question that we have had to satisfy ourselves with is, are these charges, to the users of water and the sewer system, taxes or charges for special benefits received and enjoyed by the users of the sewer system? Our conclusion is, after investigating the authorities and considering the matter from a practical standpoint, that these charges are for special benefits received and enjoyed by all users of the sewer system and are not taxes in the sense in which we ordinarily think of taxes. These charges "are impositions which, though having some of the characteristics of taxes, are nevertheless distinguishable from those burdens because made for different purposes. They are not, therefore, necessarily governed by

the same rules." *Louisville & Jefferson County Metropolitan Sewer District* v. *Barker,* 307 Ky. 655, 212 S. W. (2d) 122, 124, 125. In the case last above referred to it is said:

"Its revenue is derived solely from these collections and is devoted wholly to the maintenance and operation of the sewer system. It is said in Cooley on Taxation, Sec. 36: 'Charges for service rendered or for conveniences furnished are in no sense taxes,' but merely the price of a commodity. Here the price is based on the extent of use as measured by the quantity of metered water supplied by the Louisville Water Company, which is an independent corporate agency of the city itself.

. . . . . .

"As we have pointed out, sewer rental charges are not taxes or special assessments, but possess commercial characteristics."

The same holds true in the instant case. Here the user of water is assessed a certain amount for the use of the sewer which under ordinary circumstances is a necessary incident for the user of water to have to dispose of the sewage and water after it is used and polluted. It is upon these users alone that the charge is made and not upon the property as a whole but as the various property owners and properties become users of water they are charged for this service measured by the quantity of metered water supplied them. Under such circumstances we can see no reasonable basis upon which the user can object to paying this service for reasons hereinafter set forth.

The Court of last resort of Oklahoma in the case of *Sharp* v. *Hall,* 198 Okl. 678, 181 P. (2d) 972, 974, basing its opinion on an Alabama case of *Benson* v. *City of*

*Andalusia,* 240 Ala. 99, 195 So. 443, reached the same conclusion. The Oklahoma Court said: "Such charges assessed for the use of the sewer system cannot be construed as a general tax. They are charges for special benefits received by certain persons residing in the city, but not enjoyed by all."

Chapter 602, Private Acts of 1949 and Amendments thereto are not contrary to provisions of any general law.

This Court has held in many cases that a special act not contrary to the provisions of a general law and affecting the county or municipality in its governmental capacity are not violative of Article XI, Sec. VIII, of the Constitution. *State ex rel. Gallaher* v. *Hickman etc.,* 190 Tenn. 310, 229 S. W. (2d) 495; *Davidson County* v. *City of Nashville,* 190 Tenn. 136, 228 S. W. (2d) 89; and other cases therein referred to. This Act, Chapter 602 of the Private Acts of 1949, is merely supplemental to Chapter 183, Public Acts of 1945, Code Section 4406.102, known as the "Municipal Public Works Projects and Post War Aid Act", and Chapter 33, the Public Acts of 1935, extra session, known as "Revenue Bond Act of 1935", Code Section 4406.34. These Acts have been before this Court in various capacities in the last few years and for reasons stated in numerous opinions thereunder have been held valid and constitutional. These acts which are the general law authorize the cities of this State to construct public works, including sewer systems, and to issue revenue bonds for the purpose of paying the costs of the construction and maintenance thereof, either within or without the corporate limits of the city.

These acts providing for the sewer system, should receive a liberal interpretation. They form an exception to the general rule that a city cannot acquire

land beyond its boundaries, or perform any lawful act beyond the same. "It is usual for municipal charters, or legislative acts applicable, to provide for the construction of sewers which extend or drain territory beyond the corporate limits. And it has been held that a municipality having power to construct sewers may extend the same beyond its boundaries when necessary or manifestly desirable to afford a proper outlet for the disposal of sewage". McQuillian Municipal Corporations, 2nd Edition, Sec. 1551, Vol. 4.

The establishment and maintenance of a sewer system by a city is ordinarily regarded as an exercise of its police power. McQuillian, Sec. 1545. "The construction of a sewer is the exercise of the police power for the health and cleanliness of the municipality, and such power is exercised solely at the legislative will, and the determination of a territorial district to be taxed for a local improvement is within the province of the legislative discretion." McQuillin, supra, Vol. 5, Sec. 2202.

This Court has on numerous occasions approved the rule above announced, that a city may own and operate such beyond its corporate limits. *City Transportation Co.* v. *Pharr,* 186 Tenn. 217, 209 S. W. (2d) 15; *McLaughlin* v. *City of Chattanooga,* 180 Tenn. 638, 177 S. W. (2d) 823; *Silverman* v. *City of Chattanooga,* 165 Tenn. 642, 57 S. W. (2d) 582, and others. It is true that in none of these cases is the question of the acquiring of property beyond the city limits and the operation thereof of a sewer system is involved. These cases involve other related questions and the reasoning and rule adopted therein by this Court are equally applicable to the instant case wherein the City is operating this sewer system.

We next consider the question of whether or not the Water Company may discontinue the water service

for the refusal of the property owner to pay the sewer service charge. Does the discontinuance of the water service deprive the property owner of property or property rights in violation of Article I, Secs. VIII and XXI, of the Constitution of Tennessee or the 5th Amendment of the Constitution of the United States? "The general rule is that those furnishing the public with its water supply, either in a private or a municipal capacity, may adopt, as a reasonable regulation for conducting said business, a rule providing that the water so furnished may be cut off for nonpayment therefor; and in pursuance of such regulation the water supply may be discontinued on the failure of the consumer to pay the water rates." *Dodd* v. *Atlanta,* 154 Ga. 33, 113 S. E. 166, 167, 28 A. L. R. 465.

In so far as we can find every State in the Union, where the question has arisen, has held in accordance with the quotation last above quoted. This Court in *Jones* v. *Nashville,* 109 Tenn. 550, 72 S. W. 985; *Farmer* v. *City of Nashville,* 127 Tenn. 509, 156 S. W. 189, 45 L. R. A., N. S., 240, has held likewise. What is the difference between the discontinuing of the water for failure to pay the sewer charge? As far as we can see there can be no material difference because the sewer is a necessary incident to the use of water. The Oklahoma Court in *Sharp* v. *Hall,* supra, said: "As to the second proposition raised by appellant—that such charge was the taking of plaintiff's property without due process of law—we need go no further than the case of *Carson* v. *Sewer Commission of Brockton,* 182 U. S. 398, 21 S. Ct. 860, 45 L. Ed. 1151, which is the leading case on the question, and which has been cited and followed by all courts before whom the proposition has been raised. Therein the court approved the following language of the Massachusetts court where the case was first tried: '. . . No one denies that it

was a special benefit to the petitioner to have a sewer built in front of his land. That benefit was the probability that the sewer would be available for use in the future. But the city, by building it and receiving a part of the cost from the petitioner, did not impliedly. bind itself or the general taxes that the sewer should be maintained forever, and that the petitioner should be at liberty to use it free of further expense. If building the sewer was a special benefit, keeping the sewer in condition for use by such further expenditure as was necessary was a further special benefit to such as used it.' '' [198 Okl. 678, 181 P. (2d) 975.]

An analogous and almost identical situation arose in the case of *Gatton* v. *City of Mansfield,* 67 Ohio App. 210, 36 N. E. (2d) 306, 308, wherein that Court said: "So that from the record in this case, we are of the opinion that the sewer rental is based upon the amount of water used, the operation of the sewerage system is dependent upon the water supply, and the water and sewer service may be rightfully considered as one transaction."

In *State* v. *City of Miami,* 157 Fla. 726, 27 So. (2d) 118, 126, that court said: "It appears to us that if no constitutional rights of the owner or occupant of premises are violated by shutting off the water for nonpayment of the water bill, no such right will be violated by shutting off the water for nonpayment of the bill for use of the sewage disposal system, the two services being so interlocked that neither can be effective without the other."

To us these holdings seem rational, logical and fair.

█ The City has entered into a contract with the water company to collect for this sewer service. This contract has been approved by the Railroad and Public Utilities Commission and said Commission in approving this rule is well within its authority. Code Sections 5502-8 author-

ize the Commission to exercise absolute power of regulation and control over public utilities.

The City as a condition to permitting the water company to occupy its streets for the purpose of furnishing its residents with water could require it to collect these sewer service charges imposed by the City. *Franklin Power & Light Co.* v. *Southern Cities Power Co.,* 164 Tenn. 171, 47 S. W. (2d) 86; *Holston River Electric Co.* v. *Hydro Electric Corp.,* 166 Tenn. 662, 665, 64 S. W. (2d) 509.

Obviously the building of this sewer is for the public health. The Legislature of this State has adopted a policy approving such when it adopted Chapter 222 of the Public Acts of 1947, Code Section 3340.1, wherein among other things the Act provides: ". . . to combine charges for sewer and water services in one statement and to bill the beneficiary of such services therefor in such manner as to require the payment of both charges as a unit, and to enforce the payment of such charges by discontinuing either the water service or the sewer service or both . . ."

The policy of the State is further expressed in the Public Acts of 1945, Chapter 183, and the Revenue Bond Act as amended, heretofore referred to which are to aid municipalities in eliminating stream pollution and to aid in the collection of sewer service charges.

It seems to us that a sewage system is an essential element of a water system. Purchasers of water must have sewers in order to dispose of the water purchased. Likewise, a sewage system is dependent upon the water supplied—the two services being interlocked in such a way that one is necessary to the other.

We have very carefully considered the matter and read the able briefs and have done some independent

investigation and are satisfied that the Chancellor was correct in holding the Act in question and the Acts thereunder constitutional and valid. For these reasons the decree below must be affirmed.

All concur.