YELLOW BUS LINES, INC.

*v.*

Z. D. ATKINS, Commissioner of Department of
Finance and Taxation, State of Tennessee.

(*Nashville,* December Term, 1957.)

Opinion filed February 6, 1958.

CHARLES L. CORNELIUS, WILLIAM H. SWIGGART, Nashville, C. P. J. MOONEY, Memphis, for appellant.

GEORGE F. MCCANLESS, Attorney General, ALLISON B. HUMPHREYS, Solicitor General, and MILTON P. RICE, Assistant Attorney General, for appellees.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Yellow Bus Lines, Inc., paid under protest to the Tennessee Department of Finance and Taxation a transportation tax (transporting passengers) for the last quarter of the State's July 1, 1954-June 30, 1955 fiscal year. Its payment was demanded by reason of the liability supposed to be imposed by Item T, Code, Section 67-4102. Yellow Bus Lines then brought this suit for the purpose of forcing a refund. Its contention is that this law did not entitle the State to such tax. This appeal by the Yellow Bus Lines is from the action of the Chancellor in rejecting that insistence.

Item T provides that a tax equal to three (3%) percent of its gross receipts derived from intrastate business shall be paid the State by each person "engaged in the business of transporting persons * * * for hire by motor

vehicle, whether as a common carrier or as a contract hauler, *except transportation systems operating * * * motor coaches * * * within a municipality and its environments*". (Emphasis added.) If the carrier falls within the exception stated its obligation is to pay annually one and one-half percent of such gross receipts to the municipality involved.

Memphis and its environs is the municipality in which Yellow Bus Lines was operating. It has a population of more than one hundred thousand. The "environs" of a city of that population, for the purposes of this statute, is fixed by Code, Section 65-1601, to "a radius of seven (7) miles from the corporate limits into the county."

This bus line had a terminal within Memphis. Continuously since the foregoing legislative enactment in 1943 until September, 1954, its operations were over six routes from and to this terminal, each ending or beginning outside the corporate limits of Memphis. Each outside end of the route was well within the seven mile radius.

With two exceptions, Yellow Bus Lines operated with closed doors on each route so long as it traveled within the boundaries of Memphis. Beyond those boundaries, that is, in the county proper, passengers were free to enter and alight at points along the route. Transportation of persons from point to point within the City was, generally speaking, the practice of the Memphis Railway Company.

As to the exceptions, there were distances of approximately two to three miles on perhaps two streets not conveniently accommodated by the Memphis Street Rail-

way Company. With its acquiescence, passengers within the borders of Memphis within such territory were picked up and let off by the Yellow Bus Lines. The Yellow Bus Lines also transported from one point in the City to another therein chartered parties, such as football teams, school bands, and like groups.

With the exception of assessment for *ad valorem* taxes, Memphis exercised complete regulatory and supervisory authority over the operations of Yellow Bus Lines during this period. Code, Section 65-1601. However, during that period (1943-June 30, 1954) three percent of the annual gross receipts derived from its business was paid annually by Yellow Bus Lines to the State of Tennessee under the assumption that it was required by the aforesaid Code Section. The tax business of the Yellow Bus Lines during this period was handled by a public accountant. It does not appear that he was a lawyer.

Beginning September 1, 1954, acting under authority given by Tennessee Public Service Commission, Yellow Bus Lines extended its Poplar Avenue line to the Town of Collierville which is located in Shelby County, 11½ miles East of the City limits. Thus on September 1, 1954, for the first time since the enactment of the 1943 statute, Yellow Bus Lines extended its operations beyond the seven mile environs of Memphis, but only on one route, one of its six routes, the extension being for four and one-half miles beyond the environs of Memphis.

There is deducible from the fact stated the conclusion that the attorney representing the Yellow Bus Lines, in procuring from the Tennessee Public Service Commission permission for this extension to Collierville, discov-

ered it as a fact, or so he thought, that the public accountant was mistaken in concluding that the Yellow Bus Lines was subject to a payment to Tennessee of this transportation tax by reason of Item T, Code, Section 67-4102.

The Chancellor, in holding to the contrary, after observing that "the question was not one sided by any manner of means", said that he was persuaded to his decision by several "not completely" controlling circumstances, to-wit:—(1) "the bulk of complainant's business is not passenger transportation within the city limits, but, as before stated, from points within the city limits to communities outside the city limits. Its system is not comparable to that of the municipal system of the Memphis Street Railway Company"; (2) The Yellow Bus Lines for several years has construed this code section as imposing upon it the obligation to pay this tax to the State; and (3) "exceptions to general acts are strictly construed". In mentioning "exceptions" the Chancellor was referring to the fact that Item T excepted from those due to pay this tax to the State "transportation systems operating * * * motor coaches * * * within a municipality and its environments", to quote the language of the exception.

This is a suitable place to say that, in this Court's opinion, the above quoted language, no matter how strictly constructed, excepts Yellow Bus Lines, Inc., from those intrastate concerns due to pay the State this tax if it, the Yellow Bus Lines, is a transportation system within the meaning of Item T, Code, Section 67-4102, and was so excepted at least until it extended its route to Collierville. This is because the Yellow Bus Lines from the date of the enactment of the 1943 statute carried in

the foregoing code section until the extension to Collierville on September 1, 1954 operated solely within the City of Memphis, and its seven mile environs.

The position of the Attorney General, summarized, is that Yellow Bus Lines was never a transportation company within the exception stated because its "operation within the City of Memphis is practically entirely a 'closed door' operation".

██ The Court thinks this insistence of the Attorney General is not well taken for at least two reasons:

[1] This Court held in *City Transp. Co., Inc. v. Pharr,* 186 Tenn. 217, 224, 209 S.W.2d 15, 18, that:

"The 'closed door' feature of the certificate, and authority to take on and discharge passengers at its terminal station, does not make it other than a street railway system operating as a public service corporation in the City of Kingsport, and jurisdiction over such operations is in the governing authority of the city and not in the Public Utilities Commission."

Since the environs of Memphis for a distance of seven miles are made a part of the City of Memphis, in so far as pertains to the operation of such transportation system, the foregoing quotation applies to the Yellow Bus Lines, at least until it extended one route on September 1, 1954 to the town of Collierville.

[2] There is nothing in the language of this code section which, as this Court construes it, permits this Court to hold that the Yellow Bus Lines does not come within the exception stated merely because it operates on certain parts of its route with a "closed door". Nor is this Court

able to find any precedent which would approve such a holding.

The Chancellor said that he was influenced to some extent by the fact that the Yellow Bus Lines had construed this code section for several years as imposing upon it the obligation to pay to the State the tax therein mentioned. Perhaps the principle which the Chancellor had in mind was akin to the principle applicable as evidence to a declaration against interest. But if the Court is satisfied that such construction is erroneous, as a matter of law, it should not hold the Yellow Bus Lines bound thereby, no one but it having been prejudiced by its erroneous construction.

Moreover, the principle of its being a declaration against interest loses much of its force in this case in the light of the fact that during the period in question the Bus Company had relied on the opinion of its layman accountant as to its liability to the State.

Too, it may be that the Chancellor was influenced by the rule that the uniform construction of a statute over a period of years by those charged with the duty of enforcing it is of persuasive weight in the judicial construction of such statute.

In this connection, we suppose the fact that the State received tender of this payment continuously from the enactment of the statute in 1943 to June 30, 1954 may be regarded as evidence that during this period it construed this code section as entitling it, the State, to payment of this tax. It was not until after the later date, however, that it expressly declared such to be its construction, in so far as this record discloses.

■ Regardless of the persuasive character of a construction placed upon a statute by those executive officers charged with its enforcement, "if we are satisfied such construction is erroneous, we are impelled to depart from it". *Collins v. McCanless,* 179 Tenn. 656, 665, 169 S.W.2d 850, 853, 145 A.L.R. 1380.

To repeat for emphasis, there is excepted from those transportation companies obligated to pay this transportation tax to the State "transportation systems operating * * * motor coaches * * * within a municipality and its environments". As this Court views it, the language of that exception is not ambiguous. It necessarily includes, we think, Yellow Bus Lines, Inc. from the date of the enactment of this statute until September 1, 1954. This is because Yellow Bus Lines was a transportation system operating its motor coaches solely within the City of Memphis and its environs during that period.

Since the tax payment sought here to be recovered was for the last quarter of the State fiscal year commencing July 1, 1954, the question arises as to whether the extension by the Yellow Bus Lines of one of its routes on September 1, 1954, for a distance of four and one-half miles into the county beyond the environs of Memphis took this transportation company out of the foregoing exception within which we have otherwise held it to fall commencing with the date of the extension to Collierville?

■ Perhaps this deviation did not influence the opinion of the Chancellor and the Attorney General. This is because the deviation, however unwise, if at all, it may have been, is very slight, too slight, as this Court views it, to change the substantial rights otherwise vested in

the City of Memphis and the Yellow Bus Lines. The law does not encourage the dealing by Courts in trifles in considering whether persons shall be divested of substantial rights. That is, as expressed by Gibson, Section 62(8) "the law despises trifles and quibbles".

Attention, too, should be called to the exact status of the tax money sought by this suit to be recovered by the Bus Company. Code, Section 67-4315(a), provides that the tax due the State or City, as the case may be, shall be computed on the basis of "the total gross receipts of the taxpayer for his most recently completed fiscal year from business within and without the state".

The fiscal year of the State was July 1, 1954 through June 30, 1955. The "most recently completed fiscal year" of the Yellow Bus Lines was from April 1, 1953 through March 31, 1954. The gross receipts then for the year commencing April 1, 1953 and ending March 31, 1954 were the receipts upon which the Yellow Bus Lines had to compute the tax owed the City or State, as the case might be. No part of these gross receipts were realized from the operation of the Bus Company of its bus to and from Collierville. This is because the route was not extended to Collierville until September 1, 1954. So, all the gross receipts upon which the tax was computed were received from the operation of these buses in Memphis and its environs.

The decree of the Chancellor will be reversed, the bill sustained, and judgment entered for the Yellow Bus Company, Inc. for the amount of the tax it paid under protest with interest from date of payment.