SHARP v. HALL, City Manager.

No. 32983. June 17, 1947.

181 P. 2d 972.

Malcolm E. Rosser, of Muskogee, for plaintiff in error.

Julian B. Fite, City Atty., of Muskogee for defendant in error.

DAVISON, V.C.J. In November, 1946, the City of Muskogee passed an ordinance establishing fees for the use of public sewers by its inhabitants, and providing that the net profits should be placed in the general fund. For the purpose of fixing the rates, two classifications were made: dwellings were put on a flat per month rate; commercial users were charged on a sliding scale determined by the amount of water used. The sewer charge was added to each water bill and a failure to pay the total of water fee and sewer fee

was made a cause for discontinuance of water service. The charge was made against the property owner or tenant according to the fact as to who was liable for the water bill.

About two weeks after the passage of the ordinance, a resolution was passed, by the terms of which, multiple unit housing structures were classified as commercial users. Plaintiff, the owner of several multiple unit buildings, and chargeable with the sewer fees under the terms of the ordinance and resolution, because of his assumption of liability for public utility charges, brought this action against the defendant, as city manager, to enjoin the collection of such charges. Judgment of the trial court was for defendant, and plaintiff appeals.

For reversal of the judgment, plaintiff relies upon two propositions: first, that the city cannot make a charge for the use of its sewers; and second, that the ordinance deprives plaintiff of his property without due process of law, in violation of the provisions of the Constitution.

The Constitution of this state grants to municipalities the privilege of engaging in business (art. 18, sec. 6):

"Every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation."

This same subject is also embraced in the statutes. 11 O.S. 1941 §563.

The authority to, and method of, raising funds for the purchase of public utilities are contained in art. 10, sec. 27:

"Any incorporated city or town in this state may, by a majority of the qualified property tax paying voters of such city or town, voting at an election to be held for that purpose, be allowed to become indebted in a larger amount than that specified in section twenty-six, for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city: Provided, That any such city or town incurring any such indebtedness requiring the assent of the voters as aforesaid, shall have the power to provide for, and, before or at the time of incurring such indebtedness, shall provide for the collection of an annual tax in addition to the other taxes provided for by this Constitution, sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting same."

In the operation of a public utility, the municipality engages in business as a private corporation, but retains its cloak of governmental authority and is bound by the limitations provided by the Constitution. As we said in Public Service Co. v. City of Wagoner, 181 Okla. 281, 73 P. 2d 464:

"Regardless of the fact that a municipally owned light or water plant functions partly governmental and partly proprietary, municipal warrants drawn against the current general fund of the city to pay for expenses in either capacity becomes an obligation of the city. . . ."

But when the public utility is self-sustaining, the municipality acts in a proprietary capacity in managing and operating the business and, as said in St. L. & S. F. Ry. Co. v. Andrews, 137 Okla. 222, 278 P. 617:

". . . Neither the Constitution nor statutes specifically prescribe what rates may be charged for a municipally owned utility, nor to what purpose the profits derived therefrom must be appropriated. . . ."

We have, on several occasions, reaffirmed this doctrine, two of the cases being Perrine v. Bonaparte, 140 Okla. 165, 282 P. 332, and Jones v. Blaine, 149 Okla. 153, 300 P. 369.

Municipalities are granted, by the above constitutional provisions, the power "to engage in any business or enterprise which may be engaged in by

a person, firm or corporation by virtue of a franchise . . ." and in order to do so, may become indebted beyond the constitutional limit "for the purpose of purchasing or constructing public utilities, or for repairing the same, to be owned exclusively by such city."

If, therefore, sanitary sewers of a city comprise a public utility, the municipality may manage and operate them in its proprietary capacity as a "business enterprise" and the fact that the profits therefrom are put into the general revenue fund of the city does not have the effect of making such operation an unauthorized one.

Shortly after statehood, we held that municipalities could become indebted in excess of the limitation contained in section 26, article 10, supra, for the purpose of purchasing and installing sewers under the provision of the next section. State ex rel. Edwards v. Millar, Mayor, et al., 21 Okla. 448, 96 P. 747. Therein we held that "sewers are 'public utilities' within the meaning of the term as used in section 27, article 10, of the Constitution." This was reaffirmed in the case of Town of Afton et al. v. Gill, 57 Okla. 36, 156 P. 658.

It is by virtue of these constitutional provisions that a municipality may purchase and operate water systems, electric light plants and other public utilities. It would be a strained and farfetched interpretation to say that a municipality can exceed the debt limit to purchase and install a sewer system because it is a "public utility" and in the next breath say that no charge can be made for its use because it is not a "business enterprise". There are, of course, certain phases of the operation wherein the municipality acts in a governmental capacity also, in the exercise of its police powers, for the protection of the health and safety of the public generally. Such include the purification of water used for drinking purposes; the protective devices to guard high electrical voltage; the sanitation in sewage disposal. These governmental functions, however, would be exercised by the city whether the public utility be operated by it or a private corporation. They have no bearing upon the business management or financial method used in such operation.

The constitutional and statutory provisions of Alabama are quite similar to those of this state. The Supreme Court of that state said:

"A sewerage system constructed and maintained by a municipality is the property of the municipality, and the general public of the state at large has no interest therein. . . .

"Such charges assessed for the use of the sewer system cannot be construed as a general tax. They are charges for special benefits received by certain persons residing in the city, but not enjoyed by all." Benson v. City of Andalusia (Ala.) 195 So. 443, citing MacMahon v. Baumhauer et al., 234 Ala. 482, 175 So. 299.

Cases very analogous but from states having different statutory provisions are: Mayor and Council of Borough of Point Pleasant Beach v. Moore (N.J.) 95 Atl. 133; Shainwald v. City of Portland et al., 153 Ore. 167, 55 P. 2d 1151; Opinion of Justices, 93 N. H. 478, 39 Atl. 2d 765; Grim v. Village of Lewisville et al., 54 Ohio App. 270, 6 N. E. 2d 998; Gericke v. City of Philadelphia, 353 Pa. 60, 44 Atl. 2d 233; Gatton v. City of Mansfield, 67 Ohio A. 210, 36 N.E. 2d 306.

The method of fixing the charge for the use of a sewer by basing it upon water consumption was upheld in the case of State v. City of Miami (Fla.) 27 So. 2d 118. In the absence of actually measuring the flow of sewage, this seems to be the most equitable manner of determining the extent of use of the sewer system by the different users. And there is nothing inequitable in making such charge to the person liable for the charge for water service, whether he be landowner or tenant. The person purchasing the water service must, of necessity, use the sewer system to dispose of the water so purchased.

The reasonableness of the charge was a matter of fact to be determined by the trial court, and the same will not be disturbed on appeal unless against the clear weight of the evidence. There is ample evidence in the record to support the conclusion reached by the lower court.

As to the second proposition raised by appellant — that such charge was the taking of plaintiff's property without due process of law — we need go no farther than the case of Carson v. Sewer Commission of Brocton, 182 U.S. 398, 45 L. Ed. 1151, which is the leading case on the question, and which has been cited and followed by all courts before whom the proposition has been raised. Therein the court approved the following language of the Massachusetts court where the case was first tried:

". . . No one denies that it was a special benefit to the petitioner to have a sewer built in front of his land. That benefit was the probability that the sewer would be available for use in the future. But the city, by building it and receiving a part of the cost from the petitioner, did not impliedly bind itself or the general taxes that the sewer should be maintained forever, and that the petitioner should be at liberty to use it free of further expense. If building the sewer was a special benefit, keeping the sewer in condition for use by such further expenditure as was necessary was a further special benefit to such as used it." (175 Mass. 242, 56 N. E. 1, 48 L.R.A. 277.)

The city could make a charge for the use of the municipal sewer system under the authority granted by the Constitution where the same was not arbitrary, discriminatory or unreasonable, and the trial court was correct in denying the application for injunction.

The judgment is affirmed.

HURST, C.J., and OSBORN, BAYLESS, WELCH, CORN, GIBSON, and ARNOLD, JJ., concur.