JAMES A. MICHELSON, APPELLANT, v. CITY OF GRAND ISLAND, NEBRASKA, A MUNICIPAL CORPORATION, ET AL., APPELLEES.

48 N. W. 2d 769

Filed July 16, 1951. No. 32971.

*Grimminger & Abbott,* for appellant.

*Harold A. Prince* and *Paul C. Holmberg,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

MESSMORE, J.

The plaintiff, James A. Michelson a taxpayer of the city of Grand Island, brought this action in equity in

the district court for Hall County (1) to enjoin the city and its officials from discontinuing the plaintiff's water service to his properties for his refusal to pay certain sewage service charges established by an ordinance of the city and its officials, (2) to have declared illegal and unconstitutional the provisions of ordinance No. 2289, as amended by ordinance No. 2317, and ordinance No. 2290, part of the laws of the city of Grand Island embodied in its home rule charter, and (3) to construe certain statutory provisions with reference to which the ordinances were enacted. Hearing was had to the court. The trial court entered judgment finding generally in favor of the defendants, the city of Grand Island, Clarence W. Burdick its light, water, ice, and sewer commissioner, and Kirkpatrick-Pettis Company the purchaser of the bonds issued by the city pursuant to the ordinances, and against the plaintiff, that the petition of the plaintiff be dismissed, and assessed the costs of the action against the defendant city. Upon the overruling of the plaintiff's motion for new trial, the plaintiff perfected appeal to this court.

For convenience we will refer to appellant James A. Michelson as plaintiff and appellee as defendant, or city.

The city of Grand Island adopted a home rule charter in 1928, as provided for in Article XI, section 2, of the Constitution of this state. In Nagle v. City of Grand Island, 144 Neb. 67, 12 N. W. 2d 540, the court said that such cities, in so acting under Article XI, section 2, of the Constitution, may provide for the exercise of every power, not contravening constitutional inhibitions, connected with a proper and efficient government of the municipality, but are subject to the general laws of the state, except as to municipal matters of strictly local concern.

In 1933, the Legislature passed Chapter 146, Laws 1933, page 561. This act is now found as sections 18-501 to and including section 18-508, R. S. 1943. We briefly summarize the following sections of the act.

Section 18-501, R. S. 1943, authorizes any city or village in this state to own, construct, equip, and operate either within or without the corporate limits of such municipality a sewerage system and plant or plants for the treatment, purification, and disposal in a sanitary manner, of the liquid and solid wastes, sewage, and night soil of such municipality or to extend or improve any existing sewerage system.

Section 18-502, R. S. 1943, provides, for the purpose heretofore set out, that a municipality may issue mortgage bonds therefor. Such mortgage bonds shall not impose any general liability upon the municipality but shall be secured only on the property and revenues as hereinafter provided of such utility including a franchise stating the terms upon which, in case of foreclosure, the purchaser may operate the same, which franchise shall in no case extend for a period of longer than 20 years from the date of the sale thereof on foreclosure. Such mortgage bonds shall be sold for not less than par and bear interest at a rate not to exceed 6 percent per annum. The amount of such mortgage bonds, either issued or outstanding, shall not be included in computing the maximum amount of bonds which the said municipality may be authorized to issue under its charter or any statute of this state.

Section 18-503, R. S. 1943, provides that the governing body of such municipality may make all necessary rules and regulations governing the use, operation, and control of the sewerage system or disposal plant. The governing body may establish just and equitable rates or charges to be paid to it for the use of such disposal plant and sewerage system by each person, firm, or corporation whose premises are served thereby. If the service charge so established is not paid when due, such sum may be recovered by the municipality in an action of assumpsit, or it may be certified to the tax assessor and assessed against the premises served, and collected or returned in the same manner as other municipal taxes

are certified, assessed, collected, and returned.

Section 18-504, R. S. 1943, provides that bonds which are issued and secured by a mortgage on the utility, as provided in section 18-502, shall not be a general obligation of the municipality, but shall be paid only out of the revenues received from the service charges as provided in section 18-503, or from a sale of the property and franchises under a foreclosure of the mortgage. If a service rate is charged, to be paid as herein provided, such portion thereof as may be deemed sufficient shall be set aside as a sinking fund for the payment of the interest on said bonds, and the principal thereof at maturity.

Section 18-506, R. S. 1943, authorizes a municipality to issue and sell the general obligation bonds of such municipality upon compliance with statutory and charter requirements with reference to the issuance of bonds.

Section 18-507, R. S. 1943, provides, in part, whenever the governing body of any city extends or improves an existing sewerage system, upon approving plans and specifications thereof, it shall advertise for sealed bids a specified time in a legal newspaper published in the municipality, and the contract shall be awarded the lowest responsible bidder.

We deem it unnecessary to summarize the provisions of either sections 18-505 or 18-508, R. S. 1943.

In the case of State ex rel. City of Columbus v. Price, 127 Neb. 132, 254 N. W. 889, the act in question was before the court in a mandamus action to compel the Auditor of Public Accounts to register certain sewer bonds of the city of Columbus in the amount of $60,000. The act was at that time included in sections 18-1401 to 18-1408, C. S. Supp., 1933. This court held, after reviewing the title of the act, as follows: "The title of an independent act authorizing the construction of sewers and providing that owners or occupants of the premises shall be charged for the services, and to raise

money, is broad enough to include legislation authorizing issuance of mortgage and revenue bonds which do not impose a general liability upon the municipality but are secured only by the property and revenues of the sewerage system." The court further said: "The language in the title of chapter 146, Laws 1933, gave notice of a legislative purpose to provide authority for cities to build a different kind of sewerage system by the issuance of bonds to which the property and the revenues of the system were to be pledged, instead of general obligation bonds of the city." The judgment in that case was reversed because of an omission in the bonds which failed to comply with section 16-721, Comp. St. 1929, which has no bearing in the instant case. The case is cited to disclose the purpose of the act.

Apparently the original sewage disposal plant of the city was built in 1918, and an addition made thereto in 1928. The present plant was put in operation in 1930 or 1931. Due to the growth in population and the extensive use to which the sewerage system and disposal plant had been put, the city officials in 1947 surveyed the possibility of an addition to the plant. Engineers were employed to investigate, report, and submit plans for consideration of the governing body of the city, which was done. It also appears that the city was involved in litigation concerning its sewage plant in Stuhr v. City of Grand Island, 120 Neb. 491, 233 N. W. 886. Stuhr was granted an injunction against the city from running its sanitary sewage through an open ditch across his lands and others into Wood River which is outside of the boundaries of the city, and then into the Platte River. The injunction was to stand unless the city made certain additions to its then existing sewerage system and disposal plant to correct the nuisance, which it did in 1931, and the injunction was dissolved.

On June 1, 1949, the city, through its mayor and council, passed ordinances Nos. 2289 and 2290, which are too voluminous to detail but substantially conform

to the sections of the statutes heretofore summarized.

Ordinance No. 2289 may be summarized as follows: Section 1 set forth that it was necessary to establish rates for the use of the disposal plant and sewerage system to pay the principal and interest on revenue bonds. Section 3 established certain rates and minimum charges for the quantity of water used upon the premises as shown by the water meter. Section 7, for the most part, conforms to section 18-503, R. S. 1943, and in addition provides: "Bills for the rental charges made by this ordinance shall be rendered at the same time that bills are rendered for water service of the City and all rental charges levied by this ordinance which are not paid at or before water service charges of the City are required to be paid shall be deemed to be delinquent and the water service of such consumer may be discontinued." Section 8 provides that charges shall be placed in a separate fund designated as a "Sewerage Rental Fund," and to be used solely for the purpose of paying principal and interest on the revenue bonds. Section 9 provides that the council may establish special rates applying to consumers where the service rates or rentals would be inequitable and unfair to either the city or the consumer.

Ordinance No. 2290 refers to the bonds. There are 325 serial bonds of $1,000 each, redeemable at the option of the city at any time after five years. The first 84 bonds draw interest at the rate of $1\frac{1}{2}$ percent and the remainder at $2\frac{3}{8}$ percent per annum. The bonds are revenue obligations secured by a lien on the entire main sanitary sewerage system and disposal plant theretofore constructed, and all improvements to be made upon the same. Section 5 provides the city can collect just and equitable rates sufficient to pay the bonds and interest. Section 6 provides that the funds are to be deposited in a special fund known as the "Sewerage Revenue Bond Fund." Section 12 provides that the principal and interest should be secured by a first mort-

gage lien upon the sewerage system theretofore existing, and thereafter provides that upon failure to pay, the owners of 60 percent of the bonds shall have the option to declare the bonds due and proceed to foreclose their lien in equity, and that the court might appoint a receiver to operate the property until the default is made good. Section 15 provides that if the property should be sold in foreclosure proceedings the purchaser should be vested with a franchise for 20 years to operate under the laws of this state to pay off the bonds and interest.

The revenue bonds were sold and the $325,000 paid to the city. The city executed a mortgage to the First National Bank of Grand Island and Donald L. Pettis as trustees for the benefit of the bondholders.

It appears from the record that the plaintiff owns and pays taxes on real estate in the city. Part of his holdings consists of the Masonic Temple Building located at 211, referred to in the record as 215, Locust Street. This building comprises seven stories. The first story was vacant at the time of trial. The second and third stories were occupied by professional persons. The fourth floor was equipped for a dance hall, and the fifth, sixth, and seventh floors were lodge quarters. There are two toilets on each floor which are kept locked and are for the use of the tenants of the building. They are equipped with two bowls, a urinal, and a lavatory. The toilets are the tankless type, flush toilets. The water service running to the toilets is through a one and one-half inch pipe which operates them satisfactorily. The water from the toilets goes into the sanitary system and through the disposal plant. The building is also equipped with fire protection on each floor.

On October 4, 1949, the city submitted a bill to the plaintiff which included the charge for water and the sewerage charge as provided by ordinance. This bill is with reference to the above-described building. The bill proved to be erroneous, and the city conceded this

fact at the trial and attempted to rectify the mistake. The mistake was incident to a misconception of the ordinance as it applied to a commercial enterprise as distinguished from an apartment house or residence. The plaintiff tendered the amount of the water charge to the city, which the city refused to accept unless the sewerage charge was also paid. The city gave notice that if the accounts of the plaintiff were not paid on or before January 4, 1950, service would be discontinued. This matter was extended for a short period of time and the plaintiff instituted this injunction action to restrain the city from discontinuing the water service to his property.

At the time this suit was instituted the additions to the sewerage system and disposal plant had been made, the bonds had been sold, and the city was operating under the ordinances as heretofore, in part, set out.

It also appears from the evidence that the size of the meter in the basement of the plaintiff's building that services the same is not a proper size for such service as he requires but meets the requirements of an apartment house. It is admitted by the city that a smaller meter would tend to reduce the cost of his service. The city would not buy the meter, exchange it, or remove it.

We deem it unnecessary to set forth the pleadings. The issues joined therein appear in the assignments of error.

This brings us to the assignments of error which we consider pertinent to a determination of this appeal.

The plaintiff contends the district court erred in failing to find that the sewerage service charges amount to a special assessment for a general improvement. Are the sewerage service charges provided for in section 18-503, R. S. 1943, a special assessment for a general improvement within the meaning of the Constitution and therefore prohibited?

Article VIII, section 6, of the Constitution provides: "The Legislature may vest the corporate authorities of

cities, * * * with power to make * * * special assessments, or by special taxation of property, benefited. For all other corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, but such taxes shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same."

Section 18-503, R. S. 1943, provides in part: "The governing body may establish just and equitable rates or charges to be paid to it for the use of such disposal plant and sewerage system by each person, firm or corporation whose premises are served thereby."

This court has not had occasion to pass directly upon this issue.

In Laverents v. City of Cheyenne, — Wyo. —, 217 P. 2d 877, counsel contended that the service charge directed to be levied under the statute was in fact a tax. The court said: "True, the payment of a fee for the use of the sewer is, practically speaking, substantially like the enforced obligation of a tax. But so are the bills for the use of electric lights, whether the electric-light system is publicly or privately owned; and so are the water bills sent out monthly by the City of Cheyenne. Water bills and bills for the use of the sewer are very much alike. A public sewer system is a public utility the same as a water system. City of Edwardsville v. Jenkins, 376 Ill. 327, 33 N. E. 2d 598, 134 A. L. R. 891, Payne v. City of Racine, 217 Wis. 550, 259 N. W. 437 and cases cited. In the case of City of Harrison v. Braswell, 209 Ark. 1094, 194 S. W. 2d 12, 16, 165 A. L. R. 845, 849, speaking of service charges for the use of a sewer and for water, the court said: 'Payments by the users for the service rendered is not a tax within the meaning of the constitutional provision of Art. 16, Section 11.' The section mentioned refers to a tax (as does Article VIII, section 6, of the Constitution of this state). In the case of State v. City of Miami, 157 Fla. 726, 27 So. 2d 118, 124, the court stated:

'the imposition of fees for the use of the sewage disposal system is not an exercise of the taxing power, nor is it the levy of a special assessment.' "

In Sharp v. Hall, 198 Okl. 678, 181 P. 2d 972, the city of Muskogee passed an ordinance establishing fees for the use of public sewers by its inhabitants, and providing that the net profits should be placed in the general fund. The sewer charge was added to each water bill and a failure to pay the total of water fee and sewer fee was made a cause for discontinuance of water service. The court held that sewers were public utilities, and a municipality may fix, as a basis for computing a charge for use of the sewer, a service fee based upon the volume of water delivered to the user through the water meter. An ordinance imposing a service fee for use of public sewer and basing the amount thereof on amount of water used, and making the person purchasing the water liable therefor does not deprive such user of property without due process of law. See, also, Payne v. City of Racine, 217 Wis. 550, 259 N. W. 437, and cases cited therein.

In Grim v. Village of Louisville, 54 Ohio App. 270, 6 N. E. 2d 998, it was held that a charge for the maintenance of a sewer system was not a tax assessment, or a special assessment, but a rental authorized by statute, partaking of the nature of a tax or assessment.

The case of Hurd v. Sanitary Sewer District, 109 Neb. 384, 191 N. W. 438, cited by the plaintiff which adopted language in Futscher v. City of Rulo, 107 Neb. 521, 186 N. W. 536, is not in point but dissimilar from the issue here presented.

We conclude that the plaintiff's assignment of error cannot be sustained.

The plaintiff contends the question of sewage disposal by municipalities is one of local concern until the Legislature appropriates the field.

When the Legislature has enacted a law affecting municipal affairs, but which are also of state-wide con-

cern, such law takes precedence over any provisions in a home rule charter and the provisions of the charter must yield. But where the legislative act deals with a strictly local municipal concern, it can have no application to a city which has adopted a home rule charter. Whether or not an act of the Legislature pertains to a matter of local or state-wide concern becomes a question for the courts when conflict of authority occurs. See, Axberg v. City of Lincoln, 141 Neb. 55, 2 N. W. 2d 613, 141 A. L. R. 894; Nagle v. City of Grand Island, *supra.*

In Axberg v. City of Lincoln, *supra*, this court said: " '* * * If fire, police and health departments be deemed purely matters of local self-government, they could be abolished and the state would be unable to step in. * * * Indeed, police and fire protection and health preservation are essential to the administration of state government in such a way as to accomplish vital purposes expressed in its organic law. * * * That duty does not end at the city limits. Control of deadly, contagious diseases may often require uniform state action; * * *. The state must remain sovereign in all such affairs else its authorities cannot protect rights assured to its citizens by its Constitution. These are fundamental reasons why police, fire and health undertakings are essentially attributes of state sovereignty and matters of state-wide concern.' "

In Laverents v. City of Cheyenne, *supra*, it was said: " '* * * The science of sanitation has developed and taught much in recent years. It has demonstrated that nothing contributes more to secure the preservation of public health than a sanitary system of sewerage disposal, whether it be the modern sewers or septic closets. * * *' " See, also, Nourse v. City of Russellville, 257 Ky. 525, 78 S. W. 2d 761.

Axberg v. City of Lincoln, *supra*, cited the case of City of Cincinnati v. Gamble, 138 Ohio St. 220, 34 N. E. 2d 226, which held that the matter of health was of state-

wide concern. See, also, Adler v. Deegan, 251 N. Y. 467, 167 N. E. 705.

In the case of State ex rel. Mowrer v. Underwood, 137 Ohio 1, 27 N. E. 2d 773, it was said: "The protection and preservation of public health is of a state-wide concern, with respect to which the Legislature has jurisdiction. 'The health of the inhabitants of a city and the sanitary condition existing in any one city of the state are of vast importance to all the people of the state because of the danger through social and business relations with other parts of the state of spreading contagious and infectious diseases. For this reason, the state has not delegated to the municipal authorities complete and absolute control over the health of municipalities' inhabitants.'" See, also, Stuhr v. City of Grand Island, *supra.*

We conclude that in the matter of health and sanitation the state has entered the field; these matters are of state-wide concern; and the state is supreme over its municipalities and may, in the exercise of its sovereignty, impose duties and responsibilities upon them as arms or agencies of the state.

The city contends that the legislative history of sections 18-501 to 18-508, R. S. 1943, indicates that the Legislature did not intend to supersede the laws of cities operating under a home rule charter. Having determined that matters of sanitation and health are of state-wide concern and the state has entered the field in such respect, an analysis of Chapter 18, article 5, R. S. 1943, shows that it applies to cities having a home rule charter. In the title of the act appearing in Chapter 146, Laws 1933, this language is found: "An Act authorizing cities and villages * * *," and throughout the entire act cities and municipalities are referred to, and the language in "any city or village." We believe the act is plain, and applies to a charter city.

The plaintiff contends the district court erred in failing to find that the mortgage trust deed executed by the

city to secure the bonds issued is a general obligation of the city. We repeat the following sections of the statutes.

Section 18-502, R. S. 1943, provides a municipality may issue mortgage bonds for the purpose of improving or extending an existing system. Such bonds shall not impose any general liability upon the municipality but shall be secured only on the property and revenues.

Section 18-503, R. S. 1943, provides a governing body of such municipality may make all necessary rules and regulations governing the use, operation, and control of the sewerage system and may establish just and equitable rates or charges to be paid to it for the use of such disposal plant and sewerage system.

Section 18-504, R. S. 1943, provides that bonds which are issued and secured by a mortgage on a utility, as provided in section 18-502, shall not be a general obligation of the municipality, but shall be paid out of revenues received from the service charges as provided in section 18-503, or from a sale of the property and franchises under a foreclosure of the mortgage. If a service rate is charged, to be paid as herein provided, such portion thereof as may be deemed sufficient shall be set aside as a sinking fund for the payment of the interest and principal of such bonds at maturity.

It is clear that the Legislature has specifically authorized the issuance and sale of bonds and a mortgage to be given thereon as provided for in the act. From an analysis of the foregoing sections of the statutes, the mortgage trust deed executed by the city to secure the bonds issued does not create a general obligation of the city.

This brings us to the questions of (1) whether or not the city, by ordinance, is privileged to discontinue water service in the event that the water and sewerage bills are not paid, (2) whether or not the city can make such rules and regulations by ordinance, and (3) whether or not the same are reasonable.

In American Water-Works v. State, 46 Neb. 194, 64 N. W. 711, 38 L. R. A. 447, 50 Am. S. R. 610, this court

held that a water company, though a private corporation, by virtue of the franchise granted it by the city of Omaha and its user of such franchise, became affected with a public use. The water company had the right to prescribe all such rules and regulations for its convenience and security as were reasonable and just, and to refuse to furnish water to any inhabitant who refused to comply with such reasonable rules and regulations. The court held that the rule with reference to discontinuing the water service was a proper regulation. See, also, Keystone Investment Co. v. Metropolitan Utilities District, 113 Neb. 132, 202 N. W. 416, 37 A. L. R. 1507.

We have heretofore set out section 18-503, R. S. 1943, and by the language of the section it will be noted that it affords two methods, one as provided for by ordinance enacted by the city, a rule and regulation that in the event the consumer fails to pay the water and sewerage bill the city may then discontinue the water service. The purpose of the last sentence of the above section of the statutes is to make plain that in addition to adoption by ordinance of rules and regulations for the collection of the sewerage charges the city may sue the plaintiff for the bill or certify it to become a lien against the property.

In Gericke v. City of Philadelphia, 353 Pa. 60, 44 A. 2d 233, in construing an ordinance which provided that the user shall pay an annual charge based upon the water consumption of the property served as measured by the charges for water supplied for the then current calendar year, the Supreme Court of Pennsylvania upheld the validity of the ordinance which based the charges for use of the sewerage system on the amount of water metered to the premises.

In Gatton v. City of Mansfield, 67 Ohio App. 210, 36 N. E. 2d 306, the general code provided that sewer rental charges should constitute a lien upon the property served by the connection, and if not paid when due should be collected in the same manner as other city and village

taxes. The court said: "It is well settled that a municipality may shut off water for the non-payment of a delinquent water bill."

In State v. City of Miami, 157 Fla. 726, 27 So. 2d 118, the court held: "The provision of Miami city ordinance for shutting off water furnished by city to premises of consumer failing to pay sewer service charges is not unconstitutional as depriving persons of property without due process of law, as water and sewer services are so interlocked that neither can be effective without the other."

In Dodd v. City of Atlanta, 154 Ga. 33, 113 S. E. 166, 28 A. L. R. 465, the contention was made that if the city could, under certain circumstances, assess the cost of water connections against the property served and enforce the collection thereof by execution, levy, and sale, this remedy was exclusive and superseded the right of the city by a duly promulgated regulation to cut off the water supply until the charges for making the connection were paid. The court said that if the city could proceed by assessment method, it could proceed by the method of shutting off the water supply, under a rule or regulation for that purpose. The right to coerce and enforce the payment of arrearages by cutting off the water is cumulative, and is not affected by the fact that the city may assess the cost of the connection against the property of the consumer, and collect the same by execution, levy, and sale, as in cases of assessments for street improvements.

We are of the opinion that the sewer rental is based upon the amount of water used. The operation of the sewerage system is dependent upon the amount of water supplied, and the water and sewerage service may be rightfully considered as one transaction. The regulations adopted by the city ordinance that the water supply be shut off to residents delinquent in the payment of the water and sewerage charges to said city is not an unreasonable regulation and is permitted under section 18-

503, R. S. 1943. In the instant case, for noncompliance with the ordinance to pay the water and sewerage bill the city would be warranted in discontinuing the water service to the plaintiff.

While there is contention made on the part of the plaintiff that in enacting ordinances Nos. 2289 and 2290, the mayor and members of the council misrepresented the true situation, as also did the city attorney and as shown by newspaper clippings in evidence the purpose of which was to influence the taxpayer of the manner of thinking of the mayor and council and others connected with the project, we have examined this evidence and conclude that it is similar to that analyzed in the case of Inslee v. City of Bridgeport, 153 Neb. 559, 45 N. W. 2d 590, and we find no coercion, fraud, or misrepresentation sufficient to invalidate the issuance of the revenue bonds in question.

The defendant city, by cross-appeal, predicates error on the part of the trial court in entering judgment against it for costs. We have heretofore set out the factual situation in this respect. It is apparent the plaintiff in this action desired to test the validity of the ordinances regardless of the charges made by the city with respect to his property for water and sewerage services.

In Lamaster v. Elliott, 53 Neb. 424, 73 N. W. 925, this court held: "If the question of the liability of the respective parties to an action to pay costs therein is one which was directly considered and determined by the trial court, no motion in that court to retax costs is necessary to entitle a party to have a judgment against him for the costs or any part thereof reviewed in this court." See, also, Burton v. State, 34 Neb. 125, 51 N. W. 601; Hartford Fire Ins. Co. v. Corey, 53 Neb. 209, 73 N. W. 674.

In this trial de novo, as provided for in section 25-1925, R. R. S. 1943, from a review of the record we conclude the trial court erred in assessing the costs against the defendant city.

For the reasons stated in this opinion, we find the action of the city officials to have been within their authority, and the judgment of the trial court is therefore affirmed. With reference to the costs being taxed to the defendant city, we reverse the judgment of the trial court and direct that judgment be entered for the costs against the plaintiff in conformity with this opinion.

AFFIRMED AS MODIFIED.