CITY OF COVINGTON, Kentucky, et al.,
Appellants,

v.

SANITATION DISTRICT NO. I OF CAMP-
BELL & KENTON COUNTIES, Ky.,
et al., Appellees.

Court of Appeals of Kentucky.

May 3, 1957.

Stanley Chrisman, Ralph P. Rich, Edward H. Walton, James C. Ware, Melvin T. Stubbs, Covington, for appellants.

Stanley C. Moebus, Newport, C. W. Grafton, Louisville, Marion W. Moore, Covington, Albert C. Keeler, Cincinnati, Ohio, for appellees.

MOREMEN, Judge.

Sanitation District No. 1 of Campbell and Kenton Counties (called "district") was created pursuant to Chapter 220 of Kentucky Revised Statutes by petition of about seventeen incorporated areas and communities located in northern Kentucky. Several of the larger cities, such as Newport and Covington, had existing sewer facilities and, in all, there were about 33,000 property owners who had connections with them. The big problem, however, was the collection and disposal of sewage. Separate undertakings to accomplish this end would have required a tremendous outlay of money and, therefore, as a community project, the several cities undertook, by the creation of this district, to accomplish, by joint action at a lesser expense, the task of sewage disposal by modern methods.

After proper incorporation of the district as a separate municipal corporation, and with permission of the chief sanitation engineer in the department of health of this state, the district began to function. In 1952, $7,600,000 worth of revenue bonds were issued and the proceeds were used to construct intercepting sewers, sewage pumping stations, force mains and a sewage treatment plant.

The effluent from the treatment plant was to be emptied into the Ohio River. By these means it was anticipated that the sewage disposal would be facilitated and the obnoxious practice of dumping raw sewage into the Ohio River would be eliminated.

The various parts used in the collection of sewage were installed and, in July 1954, the treatment plant located at Bromley was put in operation. This plant was faulty in construction and, in October of the same year, interested parties obtained an injunction against the district which prohibited the use of the plant until the mechanical defects and faulty design were corrected. It was necessary then to bypass the plant, and sewage without treatment was dumped into the Ohio River.

Engineers skilled in the construction of sewage systems were employed and the district has endeavored to correct the structural defects. To date, this has not been accomplished. The remainder of the newly constructed system, however, is in operation and charges have been assessed against the various users.

The question which we have before us on this appeal arises out of the application of KRS 220.510, a fragment of which reads:

"* * * In case of failure of any user to pay for services rendered, the board may compel payment and may

enjoin further use until the payment is made, or it may institute an action in any court having jurisdiction for the recovery of charges for services rendered, or the board, may, by a notice in writing, signed by its chairman or any member of said board, notify the municipality, or the person, firm, or corporation which furnishes water to the user's premises, to shut off the water service to said user's premises, until such time as all delinquent charges, plus a reasonable charge for turning off and on the water service, against said user, are paid in full. Upon receipt of such notice in writing, the municipality, or the person, firm, or corporation, which furnishes water to the said user's premises, shall immediately shut off and discontinue the water service to the said user's premises. * * *"

A number of persons refused to pay bills submitted by the district for sewer service and the district gave notice to one of the municipalities, the city of Covington, that a user was delinquent in the payment of his sewer charges and requested the city to shut off water service until such time as the charges were paid. The city refused to do so upon the ground that the statute above quoted was in violation of the Constitutions of the State and the United States.

We think it unnecessary to outline in detail the various parties to this suit who were drawn in as individuals or as representatives of a class because no contest is had here concerning our jurisdiction to decide the issues presented. However, we have a representative for four separate bond issues while the city of Covington had issued in order to obtain capital for the benefit of its water system and these bonds were to be paid out of revenue. There is a 1955 issue of $450,000 water works and sewer revenue bonds; a 1953 issue of $250,000; a 1938 issue of $85,000; and a 1935 issue of $445,000. These bonds, as we have indicated, are revenue bonds to be paid out of operation revenues and in each ordinance is the customary pledge to impose a sufficient rate to pay principal and interest as they become due. In the last issue, 1955, is the additional safeguard that if the water revenue proved insufficient, the city pledged itself to impose a sewer service charge. This party is specifically mentioned because he has raised, in behalf of the bondholders, a constitutional question that requires considerable discussion.

Appellants contend that the statute (KRS 220.510) is unconstitutional in that

(a) it impairs the obligation of the contract between the city and its water customers and,

(b) it discriminatorily permits the district to select one or more of the city's water customers against whom to exercise the remedy of cutting off the water supply and to exclude other users from the same action, and

(c) it impairs the obligation of the contract between the city and its water works revenue bondholders.

Appellants' arguments are based mainly upon the "contract clause" found in Article I, Section 10, of the United States Constitution, and Section 19 of the Constitution of this Commonwealth. The inclusion of the clause in the Federal Constitution resulted from the fear that the then existing financial condition of the country would produce widespread enactment of state laws for the repudiation of both public and private debts. Rottschaefer on Constitutional Law, page 558. The protection of the clause extends to contracts between a state (or subdivisions thereof) and a private person, and to those between private persons.

The "obligation" of a contract has been defined as "the law which binds the parties thereto to the performance of their agreement." Sturges v. Crowninshield, 4 Wheat. 122, 4 L.Ed. 529.

■ It is an accepted principle that included in the terms of contracts are the laws which subsist at the time and place of the making of the contract, and where it is to be performed, as if they were expressly incorporated in its terms and, as stated in Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 237, 78 L.Ed. 413, 88 A.L.R. 1481:

"The obligations of a contract are impaired by a law which renders them invalid, or releases or extinguishes them (Sturges v. Crowninshield, supra, 4 Wheat. at pages 197, 198, 4 L.Ed. 529), and impairment, as above noted, has been predicated of laws which without destroying contracts derogate from substantial contractual rights."

■ It may be noted that not only must an alleged impairment be substantial, but there are several exceptions to the immunity granted by the "contract clauses," for example, the contracts are subject to the right of eminent domain. West River Bridge Co. v. Dix, 6 How. 507, 12 L.Ed. 535; City of Cincinnati v. Louisville & N. R. Co., 223 U.S. 390, 32 S.Ct. 267, 56 L.Ed. 481.

The second limitation upon the protective scope of the contract clause exists in the fact that a state may affect certain prior contracts by subsequent legislation if it has reserved the power to do so by appropriate constitutional or legislative enactments existing at the time the contracts were made, Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629, Greenwood v. Union Freight Co., 105 U.S. 13, 26 L.Ed. 961. Into the category of reserve power, the courts have read the right to protect the public health or public morals, Douglas v. Commonwealth of Kentucky, 168 U.S. 488, 18 S.Ct. 199, 42 L.Ed. 553; the control by the state of the sale of intoxicating liquors, Boston Beer Co. v. Commonwealth of Massachusetts, 97 U.S. 25, 24 L.Ed. 989; protection against nuisances despite the existing contracts, Northwestern Fertilizing Co. v. Hyde Park, 97 U.S. 659, 24 L.Ed. 1036; public safety, Chicago B. & Q. R. Co. v. State of Nebraska, 170 U.S. 57, 18 S.Ct. 513, 42 L.Ed. 948. Taxes, we suppose, need no supporting authority.

The exception which has been many times invoked by the courts, which resembles to some extent the reserve power theory, is found in the principle that the inclusion of existing laws into a contract, at the time it is made, carries with it also the general principle that those relationships defined by the contract are subject to change by subsequent legislation under a reasonable exercise of the state's police power. In this instance, the broad term, police power, is concerned with the public health and the general welfare of the community. The determination of the question of whether the state has properly exercised this power will be decisive of the case at bar.

In Nourse v. City of Russellville, 257 Ky. 525, 78 S.W.2d 761, 765, this court firmly placed legislation affecting sanitary systems of sewage disposal in the last class above mentioned, saying:

"The science of sanitation has developed and taught much in recent years. It has demonstrated that nothing contributes more to secure the preservation of public health than a sanitary system of sewerage disposal, whether it be the modern sewers or septic closets. The benefits of such system are largely lost, unless the inhabitants can be compelled to abandon the menacing structures and to connect their facilities with the system."

In Sanitation District No. 1 of Jefferson County v. Campbell, Ky., 249 S.W.2d 767, 773, it is said that it is no longer open to question that matters of sewage disposal are subject to the exercise of the police power of the state and the opinion quotes from Hutchinson v. City of Valdosta, 227 U.S. 303, 33 S.Ct. 290, 57 L.Ed. 520, this language:

"It is the commonest exercise of the police power of the state or city to provide for a system of sewers, and to compel property owners to connect therewith. And this duty may be enforced by criminal penalties. District of Columbia v. Brooke, 214 U.S. 138, 29 S.Ct. 560, 53 L.Ed. 941."

■ When we return to appellants' contention that KRS 220.510 impairs the obligation of the contract between the city and its water customers, we find that the impairment, if any in fact exists, results from the legislature's exercise of its power to protect the health of the community. In Rash v. Louisville & Jefferson County Metropolitan Sewer District, 309 Ky. 442, 217 S.W.2d 232, 238, it was said:

"And we can see no reason why the Water Company under a contract with the Sewer Board may not discontinue its service to delinquent sewer users. *The use of both services is interdependent.* * * * Louisville & Jefferson County Metropolitan Sewer Dist. v. Barker, 307 Ky. 655, 212 S.W. 2d 122; State v. City of Miami, 157 Fla. 726, 27 So.2d 118; Gatton v. City of Mansfield, 67 Ohio App. 210, 36 N.E.2d 306; Sharp v. Hall, 198 Okl. 678, 181 P.2d 972. The trial court properly so adjudged."

The opinion has been mildly criticized by the editors of American Law Reports, 26 A.L.R.2d 1362, but not upon the ground that the court concluded that the use of water and the disposal of it after contamination are interdependent and that each item may be considered as being a part of a single process. Additional cases, other than the ones set out in the above quotation and cited in the same note, recognize the close relationship. These are: Michelson v. City of Grand Island, 154 Neb. 654, 48 N.W.2d 769, 26 A.L.R.2d 1346; Gericke v. City of Philadelphia, 353 Pa. 66, 44 A.2d 233; Patterson v. City of Chattanooga, 192 Tenn. 267, 241 S.W.2d 291.

We have concluded therefore that the legislature, under its police power, reasonably and properly enacted KRS 220.510 for the protection of the health of its citizens and that the "contract clause" of the Federal and State Constitutions was not violated by its action.

■ That which we have said also applies to and answers appellants' contention that this section of the statute unconstitutionally impairs the obligation of the contract which existed between the city of Covington and holders of water works bonds. The contract evidenced by the bonds and the obligation created by them are also subject to the extraordinary police power of the sovereign. The exercise of such a power must be reasonable and in conformity with the necessity of the case and have a substantial basis for the action. Bond Brothers v. Louisville & Jefferson County Metropolitan Sewer District, 307 Ky. 689, 211 S.W.2d 867. We find no violation of that rule.

It is argued that since the city might lose water revenues which ordinarily would accrue during the period that water was cut off as a result of invoking the sanctions of KRS 220.510, the city's total revenues would be seriously affected and the obligation of the bonds would be impaired. It may be noted in passing that by assuming this attitude appellants attempt to extend the application of the "contract clause" beyond the theory of the usual case. Customarily, constitutional protection, in most of the reported cases, is requested in situations where the law or statute is directed at a particular class of contracts, such as shown in this case, where the statute is directed at the relationship between the water company and its customers. In connection with the water works bondholders, the appellants attempt to carry it a step farther and ask that its protective shield be placed around creditors of one of the parties to that contract, that is, the supplier of water. Appellants argue that if the contract between the supplier and the cus-

tomer is impaired, a resultant damage would occur to the creditors of the water supplier. If this theory were carried even farther, creditors of the bondholders themselves would be permitted to complain that their contract with the bondholders to pay money was also impaired—and so on, ad infinitum. In addition, we think the trial court, in his carefully written opinion, correctly disposed of this contention when he said:

> "Corporate bondholders are dependent for their special rights upon the terms of the bond contract—here the issuing ordinances and the text on the face of the bonds. Otherwise, they have no greater rights than ordinary corporate creditors. 13 Am.Jur. 847, Corps, § 856.

> "The contract of the bondholders of all issues is, under the present circumstances, limited to the respective bond and interest redemption accounts and not to the total revenues of water service. Since there is no showing of a threatened impairment of those redemption accounts by loss of water revenues from a shut off of water service, there is no impairment of the City's obligations of the bond contracts. For the same reason, the waterworks' bondholders are not being discriminated against in favor of the District bondholders. So long as the bond service charges are properly provided and paid, the conditions of water and sewer service are questions of internal municipal management."

Appellants next challenge the constitutionality of the act in question on the ground that in granting the district power to demand that the city shut off the water supply, the act does not provide any rule of conduct by which this exercise of power should be invoked, and rely upon a number of cases where this court has held the enactment of certain ordinances by cities was arbitrary and discriminatory. Bar-

riger v. Louisville Gas & Electric Co., 196 Ky. 268, 244 S.W. 690, 31 A.L.R. 1408; Colyer v. City of Somerset, 306 Ky. 797, 208 S.W.2d 976; Town of Jamestown v. Allen, 284 Ky. 347, 144 S.W.2d 807. None of these cases discusses at length the question of what particular section of the Constitution was violated. We assume the court found that the action of the city came within one of the twenty-nine enumerated subjects or topics of section 59 of the Constitution concerning which the legislature is denied the right to enact special or local acts. Subsection (29) of Section 59 of the Constitution provides: "In all other cases where a general law can be made applicable, no special law shall be enacted."

It has been pointed out that the Constitution does not forbid reasonable and proper classification of objects of legislation and if the classification rests upon a distinctive and natural reason, rather than an arbitrary one it is legal and the law is a general one in the constitutional sense. Allison v. Borders, 299 Ky. 806, 187 S.W. 2d 728. We discern nothing discriminatory nor unreasonable in the classification of the water users under two groups: (1) those who pay the sewage system charge; and (2) those who do not. The distinction is quite sharp. The statute gives the district no power of unjustified discrimination against those who might fail to pay their sewer service bill.

It is next contended that the district has no right to collect charges for any of its services while the disposal plant at Bromley is not functioning. About this problem the trial court in his opinion said this:

> "The sewer service contemplated to be given the sewer user in consideration of the charge imposed upon him is being rendered. The sewage is in fact being removed from the premises of the various users. The interceptors, trunks, lifts, and pumps are all in operation. The breakdown of the sew-

age treatment plant at Bromley is a serious defect in the system as a whole, but under the circumstances it cannot be said that the District is completely nonfunctioning, and so nonexistent. This is not the type of action to correct the pollution of the Ohio River. If the contamination cannot be justified it is a public wrong in which these parties have no personal or property interest to protect beyond those of the general public, not represented. 39 Am.Jur. 863, Parties, § 11; Wegener v. Wehrman, 312 Ky. 445, 227 S.W.2d 997. In adjudicating the rights of Hall and Due and others at the points of origin of sewage collection in Covington, Newport or Fort Thomas, the situation in the River below Bromley must be separated as a different problem."

We think this reasoning is correct and adopt the court's words as being our own.

▮ Finally appellants insist that the district had no right to impose a penalty of ten per cent in cases where the sewer service charge was not paid within the time fixed by the district. This action might be viewed as a discount given by the district in order to encourage prompt payment of bills. It is so termed in general business practice, the reason being, no doubt, that private individuals may not impose a penalty in the absence of an express contract concerning liquidated damages for failure to pay an account. Such is not the case with the sovereignty or one of its subdivisions. It has long been settled that such an entity may assess penalties in cases of nonpayment of taxes and other items. We believe it is unnecessary to assemble cases on the subject. In any event, we agree with the trial court that the right to impose a penalty for delinquent payment comes within the powers specifically granted to the district to fix rates and compensation or rentals to be charged for the services rendered.

The judgment is therefore affirmed.