Becker, Appellant, *v.* Schuylkill Haven Borough.

Argued January 8, 1959. Before JONES, C. J., MUSMANNO, JONES, COHEN and MCBRIDE, JJ.

*Ralph M. Bashore,* with him *W. J. Krencewicz,* for appellant.

*H. G. Stutzman,* with him *Stutzman, Lewis and Sidoriak,* for appellees.

OPINION BY MR. JUSTICE COHEN, May 8, 1959:

Edwin Becker filed a complaint in equity alleging that without cause the defendant-borough discontinued supplying water to his premises. He sought a mandatory injunction for restoration of the water connection. Certain agreements and stipulations as to fact were entered into so that the water service was restored pending the final disposition of the case. The court below, with which the court *en banc* agreed, dismissed the complaint in equity and entered judgment in favor of the defendants.

The defendant borough, while admitting that the water service had originally been disconnected, argues that the appellant failed to pay sewer charges, and under the authority of the Act of April 14, 1949, P.L. 482, as amended by the Act of September 7, 1955, P.L. 576, 53 P.S. §2261[1] and Ordinance 394[2] of the Borough

---

[1] "If the owner or occupant of premises served by any water utility . . . shall neglect or fail to pay . . . any rental, rate or charge for sewer, sewerage, or sewage treatment service imposed by any municipal authority organized . . . by any borough, such water utility is hereby authorized and required, at the request and direction of such authority, or of the city, borough, or township to which the authority shall have assigned its claim or lien for such service, to shut off the supply of water to such premises until all such overdue rentals . . . shall be paid."

[2] "Sewer rentals shall be due and payable quarterly. . . . If not paid . . . the Borough shall have the right to cut off sewerage service and water service from the delinquent premises and not to restore the same until all delinquent bills against the same and the cost of cutting off and restoring service shall have been paid."

of Schuylkill Haven, the borough was authorized to discontinue the water service upon due notice.

While the borough owns and operates the water distribution system, the borough operates but does not own the sewer system. The sewer system and sewage treatment plant is owned by the Municipal Authority of the Borough of Schuylkill Haven. It issued revenue bonds to provide for the sewer's acquisition and construction, then leased the facility to the borough.

Appellant maintains that the borough has no power under the Act of 1955 to shut off the water since the act only envisions situations where an owner of property has failed to pay a sewer bill to a municipal authority and then the right to shut off or discontinue the water accrues when the municipal authority has assigned its claim for sewer service to the borough.

The public policy enunciated by the legislature in the preamble of the act reveals that in order to enable municipal authorities to acquire, construct and operate sewage disposal and sewage treatment works, revenues must be assured to the authority. Thus, prompt payment of rentals for charges can only be assured by exercising a right of shutting off the water for the nonpayment of the sewage rental. Since many water utilities are operated by municipalities, the act, in order to make the collection of the sewer rentals more secure for authorities, authorized the water utility, at the request and direction of the authority or of the city, borough or township to which the authority shall have assigned its claim, to shut off the supply of water until all overdue rentals are paid.

Unfortunately for the borough, the drafters of the legislation only contemplated situations where the sewer services were operated by an authority. No statutory provisions were made for the situation pre-

sented in this appeal, *i.e.,* a borough operating a sewer service. For these reasons, we are of the opinion that the Act of 1955 is inapplicable to the situation at bar.

Despite this, the borough still attempts to justify its action by urging upon us the validity of Ordinance 394; citing cases from allied jurisdictions, notably *Michelson v. City of Grand Island,* 154 Neb. 654, 48 N.W. 2d 769 (1951); *State et al. v. City of Miami,* 157 Fla. 726, 27 So. 2d 118 (1946); and *Sharp v. Hall,* 198 Okla. 678, 181 P. 2d 972 (1947) which permit the discontinuance of water service for nonpayment of sewer charges. Nevertheless, our review of those cases reveal general enabling legislation which authorizes the municipality to enact "shut off" ordinances. Our borough code,[3] however, does not provide for this method of collecting arrearages. On the contrary, the code section is clearly mandatory as to the method to be observed for sewer rental collection,[4] only by the filing of liens according to the procedures set forth for municipal liens.[5]

In view of the mandatory language of the code we are precluded from supplying the borough with an additional method for the collection of unpaid sewer charges. Since both the Act of 1955 and the ordinance of the borough are insufficient to provide for the "shut-

---

[3] Act of May 4, 1927, P. L. 519, as amended, 53 P.S. §47101 *et seq.*

[4] The Act of May 4, 1927, P. L. 519, Art. XXI, §2172, as amended, 53 P.S. §47172 provides: "Such . . . charge . . . *shall* be authorized and collected . . . and . . . *shall* be a lien on the properties charged. The collection thereof *shall* be made and enforced in the manner municipal claims are collected." (Emphasis supplied).

[5] The Act of May 4, 1927, P. L. 519, Art. XXI, §2173, as amended, 53 P.S. §47173 provides: "Such . . . charges . . . shall be a lien on the properties charged . . . and . . . may be collected . . . by a lien filed in the nature of a municipal lien."

off", we are unable to fill the void apparently created by legislative oversight.

Decree reversed, at appellees' cost.