**CITY OF BRECKENRIDGE, Appellant,**

v.

**Leman COZART, Appellee.**

**No. 4524.**

Court of Civil Appeals of Texas, Eastland.

March 3, 1972.

Rehearing Denied March 31, 1972.

Harrell & Thompson (W. G. Thompson), Breckenridge, for appellant.

Jimmy L. Browning, Breckenridge, for appellee.

McCLOUD, Chief Justice.

The issue to be decided is the constitutionality of a city ordinance which gives a city the right to discontinue water service to premises when the occupant fails to pay a city garbage collection charge.

Leman Cozart sued the City of Breckenridge alleging that Section 12 of the City's Ordinance No. 204 was unconstitutional and invalid. Section 12 authorizes the City to discontinue water service to the premises of any party who does not pay "sanitary service charges". The case was tried before the court without a jury. The court held that the discontinuance of water service to Cozart's residence because of his refusal to pay the City a garbage collection charge constituted a taking of Cozart's property without due process of law. Judgment was entered declaring Section 12 unconstitutional and the City was enjoined from enforcing the provisions of said section. The City of Breckenridge has appealed. We reverse and render.

The City of Breckenridge is a municipal corporation and operates as a home rule city. The water works, sewer system and garbage disposal system are all owned and operated by the City as public utilities. Pursuant to the regulations of the Texas Air Control Board the City acquired a sanitary landfill in order to bury garbage and trash collected by its garbage disposal system. On November 3, 1970, the City Commission passed Ordinance No. 204 which was a mandatory garbage disposal ordinance. Section 12 provided that all sanitary service charges should be paid monthly at the office of the water department, and if not paid, the City would have the right to discontinue water service to the premises. The City had previously enacted an ordinance providing for discontinuance of water and sewer service for failure to pay either the water or sewer service charge. Appellee, Cozart, is a resident of Breckenridge and is the owner of a single family residence. His home is connected to the water and sewer system owned and operated by the City. After the enactment of Ordinance No. 204, appellee was billed by the City for water, sewer and trash services. Cozart tendered the charges for water and sewer services, but refused to pay the $2.50 monthly garbage disposal fee. After appellee refused to pay the monthly garbage disposal fee for the months of November, December, January and February, the City discontinued water service. Appellee testified that he knew the City's disposal system was available to him but that he did not wish to use the City's garbage

disposal system. He places his solid wastes, other than waste food stuffs, in covered metal containers located in his yard. Periodically he moves the waste in these containers to a relative's farm. He buries waste food in his garden.

Appellant, City contends the trial court erred in declaring Section 12 unconstitutional. Appellee, Cozart, argues that shutting off his water supply, because he refuses to pay the garbage collection charge, is a taking of his right to the water supply without due process of law and violates his constitutional guarantee. United States Constitution, 14th Amendment; Texas Constitution, Article 1, Sec. 19, Vernon's Ann.St.

■ The constitutionally protected right of property is not an absolute right. In 16 Am.Jur.2d 691, Constitutional Law, Sec. 363, it is stated:

"The right is subject to such reasonable restraints and regulations established by law as the legislature, under governing and controlling power vested in it by the constitution, may think necessary and expedient. Thus, it is subject to limitation by reason and by means of legitimate exercises of the state's police power.

The right to own and enjoy property is no higher in the constitutional sense than the right of liberty. And all property is held under the implied obligation that the use of it shall not be injurious to the community."

We find no Texas case dealing with the issue of whether under its police power, the City can discontinue water service for failure to pay garbage and sewer service charges. The Court in Bexar County v. City of San Antonio, 352 S.W.2d 905 (Tex.Civ.App.1962, writ dism.) impliedly recognized that water service can be discontinued for failure to pay the sewer charge. The Court said that such an ordinance was nothing more than a regulation whereby the city could prevent a person who did not pay the sewer charge from using the sewer, and that the ordinance was not penal in nature. The Court in Michelson v. City of Grand Island, 154 Neb. 654, 48 N.W.2d 769 (1951), expressly held that a municipal corporation may discontinue water service to the user, if the user fails to pay the sewer charges.

The question presented in this appeal was decided in favor of the municipal corporation in Cassidy et al. v. City of Bowling Green et al., 368 S.W.2d 318 (Ky.Ct. of App.1963). There the Court was concerned with the constitutional validity of an ordinance passed by the City of Bowling Green where it was contended that the City had no right to cut off water service to parties whose garbage disposal bills were delinquent. The Court held that exclusive control of garbage disposal by the City was an essential health matter and that the right to regulate same was within the police powers of the city. The Court said garbage disposal fell within the same category as sewage disposal and since the City had the right to require its inhabitants to accept garbage and sewer services, it could require them to bear the expense thereof by payment of reasonable fees. The Court said:

"The final contention is that the City may not enforce collection of its garbage disposal charges by discontinuance of its water services. We are unable to grasp from appellants' brief what constitutional right is being breached by this method of collecting bills. It is shown by this record that for public health and sanitation purposes the City furnishes water service, sewerage service, and garbage disposal service. They are all inter-related and the City is under no obligation to furnish any or all of these services except upon the payment of reasonable charges. This public health program, while divided into separate administrative units, is a single program. Any reasonable method of collection is justified and certainly deprives appellants of no constitutional rights.

The reasonableness of discontinuing one public service for failure to pay for a related public service was recognized in Rash v. Louisville & Jefferson County Met. Sewer Dist., 309 Ky. 442, 217 S.W. 2d 232, and City of Covington v. Sanitation District No. 1, Ky., 301 S.W.2d 885. We are not inclined to say that *interdependence* is necessarily a controlling factor. However, the record shows that garbage disposal and water supply are closely related from a sanitation standpoint and we can find nothing arbitrary or unreasonable about this method of collecting service charges."

The opposite view was expressed in an earlier decision of the Supreme Court of Nebraska. Garner v. City of Aurora, 149 Neb. 295, 30 N.W.2d 917 (1948). There the Court held that the City of Aurora could not discontinue water service for failure to pay garbage collection charges and as a basis for the holding said:

"The authorities are uniform to the effect that a public service corporation cannot refuse to furnish its public service because the patron is in arrears with it on account of some collateral or independent transaction, not strictly connected with the particular physical service. For instance, electric companies frequently sell electric stoves, refrigerators, and the like. Such a company cannot cut off electric service because the patron is in default in the payment of a bill of that description."

■ Environmental conditions have changed radically since the *Aurora* case was decided in 1948. Anti-pollution legislation has been enacted at both the federal and state levels. The problem of garbage disposal and waste disposal is of paramount importance. Police power is not static and unchanging. As the affairs of the people and government change and progress, so the police power changes and progresses to meet the needs. 12 Tex.Jur. 2d 416, Constitutional Law, Sec. 70.

The Texas Legislature recently enacted Section 13, Article 4477–8, Vernon's Ann. Civ.St., known as the County Solid Waste Control Act, which expressly provides for the precise action taken by the City of Breckenridge. The statute became effective after the trial of the instant case. Section 13 states:

"Any public agency or any county may offer solid waste disposal service to persons within its boundaries, may require the use of such service by any or all such persons, may charge fees therefor, and may establish said service as a utility separate from other utilities within its boundaries. *To aid in enforcing collection of fees for such solid waste disposal service, any public agency or county may suspend service from any or all other utilities owned or operated by it to any person who may become delinquent in payment of solid waste disposal service fees until such delinquency has been paid in full.*" (emphasis added)

The City furnishes water, sewerage, and garbage disposal services. We think, at least to some extent, such sanitation services are interrelated.

■ We adopt the rule announced in the *City of Bowling Green* case and hold that Section 12 of Ordinance No. 204 is a valid and reasonable exercise of the inherent police power of the City of Breckenridge. Section 12 is not unconstitutional, illegal, or invalid and the discontinuance of water by the City in accordance with the provisions of Section 12 did not constitute a taking of appellee's property without due process of law.

The judgment of the trial court is reversed and judgment is rendered for appellant.